# Illinois Official Reports

## Appellate Court

---

### *Meeks v. Great America, LLC*, 2017 IL App (2d) 160655

---

| | |
|---|---|
| Appellate Court Caption | SHATOYA MEEKS, Plaintiff-Appellee, v. GREAT AMERICA, LLC, d/b/a Six Flags Great America and Six Flags Hurricane Harbor, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0655 |
| Filed | May 31, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 15-L-24; the Hon. Diane E. Winter, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael M. Fenwick and Lyndon C. Molzahn, of Molzahn, Rocco, Reed & Rouse, LLC, of Chicago, for appellant.<br><br>David R. Centracchio and Joseph G. Ryan, of Gordon & Centracchio, LLC, of Chicago, for appellee. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.<br>Justices Jorgensen and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a jury trial in the circuit court of Lake County, plaintiff, Shatoya Meeks, obtained a judgment against defendant, Great America, LLC, doing business as Six Flags Great America and Six Flags Hurricane Harbor, awarding her $1,514,670.57 for a disabling hand injury that she sustained on a waterslide at a water park operated by defendant. As a sanction for defendant's failure to disclose the identity of certain occurrence witnesses and to produce written incident reports that witnesses were believed to have completed, the trial court gave a modified pattern jury instruction on missing witnesses and evidence. Defendant argues that the trial court committed reversible error by doing so. We affirm.

¶ 2    The incident giving rise to this action occurred in July 2011. Plaintiff filed a timely complaint, which she voluntarily dismissed pursuant to section 2-1009 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1009 (West 2010)). She timely refiled the complaint in September 2014. In count I of her complaint, plaintiff alleged that, while riding a waterslide, she sustained lacerations and torn ligaments to her wrist and hands. She alleged that defendant carelessly and negligently operated the waterslide, failed to provide adequate warning to guests of the hazards associated with riding the waterslide, failed to inspect the waterslide to ensure that it was safe for its intended use, and "[w]as otherwise careless and negligent in the operation, maintenance and control of [the waterslide]." Count II advanced a negligence claim under a theory of *res ipsa loquitur*, alleging that "the manner and circumstance surrounding the occurrence and injury *** is of the kind which does not ordinarily occur without someone's negligence." Defendant filed its answer and raised the affirmative defense of contributory negligence, alleging that plaintiff failed to keep a proper lookout.

¶ 3    During pretrial discovery, plaintiff requested the names of the dispatcher and the "run out attendant" who were running the waterslide when the accident occurred. She also requested the name of an employee who "cycled" through the waterslide after the incident in order to identify any hazardous conditions. Defendant initially indicated that those three individuals could not be identified. Plaintiff took the discovery deposition of Nicholas Hollendonner, who was an employee of defendant when the incident occurred. Hollendonner supervised the waterslide and other rides. He was on a break when the incident occurred, but he attended to plaintiff immediately afterward. Another employee had been supervising the waterslide during Hollendonner's break. At Hollendonner's discovery deposition, he testified that he believed that he had completed an incident report. Although the report was within the ambit of plaintiff's discovery requests, defendant was initially unable to locate the report. Defendant also did not disclose the identity of the employee who supervised the waterslide while Hollendonner was on his break.

¶ 4    With trial scheduled for the week of April 18, 2016, plaintiff took Hollendonner's evidence deposition on April 14, 2016. After Hollendonner's evidence deposition, defendant disclosed—for the first time—the identities of the waterslide's dispatcher, its "run out attendant," and the individual who "cycled" through the ride after the incident. Later that day, defendant's counsel tendered two documents prepared by Hollendonner on the date of the incident. One document was entitled "Witness Statement." The other was entitled "Lifeguard Rescue Report." A note from counsel stated that the witness statement had just been located. The witness statement named the employee who supervised the waterslide

- 2 -

during Hollendonner's break. The witness statement also indicated that a medical technician employed by defendant attended to plaintiff after the incident.

¶ 5 On April 18, 2016, plaintiff filed a motion for sanctions against defendant for (1) its failure to produce Hollendonner's witness statement and lifeguard report and (2) its failure to disclose the identities of the various witnesses discussed above. Plaintiff also argued that, pursuant to defendant's standard operating procedures, each of those witnesses would have filled out an incident report. Plaintiff argued that the discovery violations warranted entry of a default judgment against defendant. Alternatively, plaintiff proposed that defendant's affirmative defense be stricken and that the jury be given Illinois Pattern Jury Instruction, Civil, No. 5.01 (2011) (hereinafter, IPI Civil (2011) No. 5.01), which instructs jurors that they may draw inferences against parties who fail to offer evidence or to produce witnesses within their control and not equally available to their opponents. Defendant filed a written response in which it argued that its conduct did not warrant any sanction. Defendant alternatively argued that, if a sanction were warranted, the court should (1) declare a mistrial,[1] (2) order defendant to pay "court costs and Plaintiff's trial costs to date," (3) order defendant to arrange and pay for depositions of the previously undisclosed witnesses, and (4) set a new trial date within 60 days.

¶ 6 At the hearing on plaintiff's motion, plaintiff's counsel opposed delaying trial in order to conduct additional discovery. Counsel noted that plaintiff developed posttraumatic stress disorder as a result of the incident and that preparing for trial had caused her to relive the trauma. Counsel argued that putting plaintiff through the process of preparing for trial again would essentially exacerbate the emotional harm caused by the incident. Counsel alternatively argued that, if the trial court deemed entry of a default judgment to be too harsh a sanction, defendant's affirmative defense of contributory negligence should be stricken. Counsel argued that, in that event, IPI Civil (2011) No. 5.01 should be given, but the instruction would need to be modified. As written, IPI Civil (2011) No. 5.01 states:

"If a party to this case has failed [to offer evidence] [to produce a witness] within his power to produce, you may infer that the [evidence] [testimony of the witness] would be adverse to that party if you believe each of the following elements:

1. The [evidence] [witness] was under the control of the party and could have been produced by the exercise of reasonable diligence.

2. The [evidence] [witness] was not equally available to an adverse party.

3. A reasonably prudent person under the same or similar circumstances would have [offered the evidence] [produced the witness] if he believed [it to be] [the testimony would be] favorable to him.

4. No reasonable excuse for the failure has been shown."

Counsel noted that proof of the four elements set forth in the instruction would require the jury to be informed that defendant had committed discovery violations. Implicitly taking the position that it would be improper to submit such evidence to the jury, counsel argued that "the only way that this could really be handled would be a modified 501 [*sic*], that as part of the sanction *the Court would find that evidence was under the control and should have been*

---

[1]The record reflects that the jury had already been selected when plaintiff's motion and defendant's response were filed.

*produced by the exercise of reasonable diligence instead of leaving it to the jury to decide*, and that the evidence was not equally available to us as an adverse party." (Emphasis added.)

¶ 7        Concluding that defendant's failure to disclose the witnesses and documents at issue was not willful, the trial court declined to enter a default judgment or to strike defendant's affirmative defense. However, the court also rejected defendant's proposal to declare a mistrial. The court expressed doubt that the previously undisclosed witnesses could be located and deposed within the time frame defendant proposed.[2] The court indicated that it would give a modified instruction on the inference to be drawn from the missing witnesses and documents.

¶ 8        Evidence at trial established that the waterslide was constructed of fiberglass. Riders traveled down the slide headfirst on mats, starting in a tube that led to an open-air portion. At the top, a dispatcher instructed riders how to use the slide. A "run out attendant" stationed at the bottom of the slide monitored riders as they descended. Each day, before the slide opened, someone from defendant's aquatics department would conduct an inspection that consisted of "cycling" the ride, *i.e.*, descending on a mat in the same manner that a rider would. Once a week, someone from defendant's fiberglass shop inspected the slide, looking for nicks or deterioration creating sharp or jagged areas of fiberglass. The manual supplied by the slide's manufacturer called for a daily inspection before turning the water on.

¶ 9        Hollendonner testified at his evidence deposition that, when he was notified of plaintiff's injury, he ran to the scene. Plaintiff was in the waterslide's "run out area." The water was red with blood. Plaintiff was taken away in an ambulance. At that point, an employee "cycled" the waterslide.

¶ 10       Plaintiff testified that, while traveling through the waterslide's tunnel, she felt a blunt force in her hands and her right ankle. When the ride was over, she saw that her hands were bleeding. She was taken to a local hospital, where surgery was performed on her left hand. Despite the surgery, plaintiff was no longer able to move three fingers of her left hand. Prior to the injury, she had worked as an administrative assistant. She was no longer able to perform her job duties, which consisted largely of data entry. Plaintiff testified that she had difficulty with activities like brushing her teeth and cooking for her children. She suffered from throbbing pain and had nightmares about the incident.

¶ 11       The trial court gave the jury a written instruction based on IPI Civil (2011) No. 5.01, stating that defendant failed to offer the testimony of the supervisor, the dispatcher, and the "run out attendant" who were on duty when plaintiff was injured; the medical technician who attended to plaintiff; and the employee who "cycled" the ride after the incident. The instruction further stated that defendant failed to offer (1) witness statements from the supervisor, the dispatcher, the "run out attendant," and the employee who "cycled" the ride; and (2) Hollendonner's witness statement and lifeguard rescue report. The instruction advised the jurors that they could infer that the missing documents and testimony would be adverse to defendant.

¶ 12       Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) provides, in pertinent part:

_____

[2] Defendant did not provide any information suggesting that the witnesses still worked for defendant, or about their current location or availability for deposition. Nor did defendant offer to locate and produce the witnesses for deposition.

"If a party *** unreasonably fails to comply with any provision of part E of article II of the rules of this court (Discovery, Requests for Admission, and Pretrial Procedure) or fails to comply with any order entered under these rules, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including, among others, the following:

(i) That further proceedings be stayed until the order or rule is complied with;

(ii) That the offending party be debarred from filing any other pleading relating to any issue to which the refusal or failure relates;

(iii) That the offending party be debarred from maintaining any particular claim, counterclaim, third-party complaint, or defense relating to that issue;

(iv) That a witness be barred from testifying concerning that issue;

(v) That, as to claims or defenses asserted in any pleading to which that issue is material, a judgment by default be entered against the offending party or that the offending party's action be dismissed with or without prejudice;

(vi) That any portion of the offending party's pleadings relating to that issue be stricken and, if thereby made appropriate, judgment be entered as to that issue; or

(vii) That in cases where a money judgment is entered against a party subject to sanctions under this subparagraph, order the offending party to pay interest at the rate provided by law for judgments for any period of pretrial delay attributable to the offending party's conduct.

In lieu of or in addition to the foregoing, the court, upon motion or upon its own initiative, may impose upon the offending party or his or her attorney, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee, and when the misconduct is wilful, a monetary penalty."

Sanctions should be designed to effect discovery, rather than to punish. *Martinez v. Pfizer Laboratories Division*, 216 Ill. App. 3d 360, 373 (1991). Accordingly, "a 'just order' under Rule 219(c) is one which, to the degree possible, ensures both the accomplishment of discovery and a trial on the merits." *Id.* "The imposition of sanctions is within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion." *In re Marriage of Liszka*, 2016 IL App (3d) 150238, ¶ 31.

¶ 13 There appears to be no dispute that the identities of the employees mentioned in the court's instruction, and whatever witness statements or reports they prepared, were within the ambit of plaintiff's discovery requests. Defendant nonetheless argues that its failure to comply with discovery did not warrant the instruction. Citing *Buehler v. Whalen*, 70 Ill. 2d 51 (1977), as an illustration of conduct that would justify giving IPI Civil (2011) No. 5.01 as a sanction for discovery violations, defendant argues that its own conduct did not rise to that level. Defendant contends that the course of action that it proposed—rescheduling trial and assessing costs to defendant—was preferable. In *Buehler*, the discovery violation was willful. Here the trial court found that defendant did not willfully withhold evidence and the identities of the witnesses. We find no support in *Buehler*, however, for the proposition that IPI Civil (2011) No. 5.01 may never be given as a sanction for anything less than willful discovery violations. Nor are we persuaded that the remedy proposed by defendant was

necessarily more appropriate than the instruction. Plaintiff advanced cogent reasons why delaying trial would cause hardship, even if defendant paid plaintiff's costs. Furthermore, the trial court was skeptical that defendant would be able to produce the previously undisclosed witnesses within the time frame defendant proposed. Thus, the trial court confronted the possibility that the additional delay would be for naught. We cannot say that it was an abuse of discretion to instruct the jury that it may draw an inference adverse to defendant. Moreover, such an instruction was particularly appropriate in light of the interplay between plaintiff's theory of *res ipsa loquitur* and defendant's affirmative defense of contributory negligence. Absent the challenged instruction, the jurors might have rejected plaintiff's *res ipsa loquitur* claim on the basis of speculation that the accident could have been due to plaintiff's own negligence.

¶ 14    Defendant also contends that the trial court erred by modifying IPI Civil (2011) No. 5.01 and by giving the instruction without making a foundational finding that "in all likelihood a party would have produced the witness/document under the existing facts and circumstances except for the fact that the testimony/contents would be unfavorable" (IPI Civil (2011) No. 5.01, Notes on Use, at 45). Without conceding that any instruction should have been given on the inference to be drawn from the absence of witnesses and documents, defendant argues that, if such an instruction was appropriate, it should have conformed to the pattern instruction, which lists four elements that must be satisfied before an adverse inference may be drawn. We conclude that this argument is not properly before us. At the hearing on plaintiff's motion for sanctions, defendant did not object to the trial court's decision to modify IPI Civil (2011) No. 5.01. Defendant now argues that it preserved its objection by taking the position in the trial court that "only a mistrial was the adequate remedy." However, "[i]n order to preserve an objection to an instruction, the objection must be set forth with specificity so that the trial court knows the specific nature of the objection before ruling." *Bruntjen v. Bethalto Pizza, LLC*, 2014 IL App (5th) 120245, ¶ 155. Defendant's categorical objection at trial to any sanction other than a mistrial did not preserve the alternative arguments defendant advances in this appeal. "A party cannot sit idly by while the trial court undertakes a course of action and then allege error in that regard." *Tokar v. Crestwood Imports, Inc.*, 177 Ill. App. 3d 422, 434 (1988). After the trial court rejected defendant's proposal to declare a mistrial and chose instead to use a jury instruction to remedy defendant's discovery violations, it was incumbent upon defendant to bring to the trial court's attention any reasons then known to defendant as to why the court's course of action was improper. Having failed to do so, defendant cannot now insist that the trial court's ruling warrants reversal.[3] *Id.* at 434-35

¶ 15    Defendant points out that, in order to obtain a just result or to maintain a sound and uniform body of precedent, we may choose to consider an issue that was not properly preserved for review. See, *e.g.*, *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505 (2002). Defendant argues that for us to decline to consider whether it was proper to omit the foundational elements from the jury instruction would amount to "upending *** sound precedent that submits the weight and credibility of evidence to the jury." Defendant fails to explain how our decision, which does not reach the merits, has any impact on existing

---

[3]This is true even though defendant later raised the issue in its posttrial motion. *Tokar*, 177 Ill. App. 3d at 434-35.

precedent. Furthermore, we are not persuaded that considerations of justice are compelling enough to force plaintiff to endure another trial in order to relieve defendant of the consequences of its own lack of diligence. Defendant complains that "the modified instruction improperly shifted the burden of proof without leaving a rebuttable presumption for the defense." Thus, according to defendant, "plaintiff no longer had the burden to prove defendant's negligence because the jury was instructed that the missing evidence was adverse—period." However, although the instruction relieved plaintiff of the burden of proof on the foundational elements for the adverse inference, defendant was free to offer evidence rebutting the inference by showing that it used due care in the maintenance, inspection, and operation of the waterslide.

¶ 16 For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 17 Affirmed.