2023 IL App (4th) 230187

NO. 4-23-0187

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 15, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| SANDY MULLIGAN, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Fulton County |
| THE LOFT REHABILITATION AND NURSING OF | ) | No. 21LL04 |
| CANTON, LLC, d/b/a Loft Rehabilitation & Nursing of | ) | |
| Canton, | ) | Honorable |
|     Defendant-Appellant. | ) | Thomas B. Ewing, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court, with opinion.
Justices Harris and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1 On September 9, 2020, plaintiff, Sandy Mulligan, was admitted to a long-term care nursing care facility owned by defendant, the Loft Rehabilitation and Nursing of Canton, LLC (Loft). That same day, plaintiff fell and sustained injuries, including a hip fracture, which required hospitalization. Upon her admission to the Loft, plaintiff had executed the admissions paperwork, including a contract between her and the facility (Contract). The executed paperwork also included an arbitration and limitation of liability rider to the Contract (Arbitration Rider). In April 2021, plaintiff filed a complaint against the Loft for the injuries she suffered while under the Loft's care. In June 2022, the Loft filed a motion to stay and compel arbitration pursuant to the terms of the Arbitration Rider. After an August 2022 hearing, the Fulton County circuit court entered a written order granting the Loft's motion to compel arbitration. Plaintiff filed a motion to reconsider asserting the Arbitration Rider was substantively unconscionable. On February 3, 2023, the court

entered a written order agreeing with plaintiff, granting her motion to reconsider, and denying the Loft's motion to compel arbitration.

¶ 2　　　　Pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), the Loft appeals the circuit court's February 3, 2023, order granting plaintiff's motion to reconsider and denying its motion to compel arbitration. The Loft contends the court erred by (1) failing to enforce the delegation clause of the Arbitration Rider and, in the alternative, (2) finding the Arbitration Rider was substantively unconscionable. We reverse and remand with directions.

¶ 3　　　　　　　　　　　　　I. BACKGROUND

¶ 4　　　　Since 2018, the Loft's admission paperwork was electronic, and residents who completed the paperwork themselves did so on an iPad. Plaintiff had completed her own admissions paperwork. The appellate record contains both a printed version of the Arbitration Rider and a version that is a printout of screenshots from an iPad. The two versions are similar but not identical. The differences in the two versions are noted when necessary for the disposition of this case.

¶ 5　　　　The Arbitration Rider referred to the Contract as the "Agreement" and the Arbitration Rider as the "Rider." The screenshot of the Arbitration Rider shows plaintiff could accept or decline it. On the printout version, plaintiff's signature is affixed to the Arbitration Rider. Paragraph two of the Arbitration Rider expressly provided the resident and the facility shall submit to arbitration the following disputes:

>　　　　"(a) all claims or controversies arising out of or in any way relating to the Agreement***;
>
>　　　　(b) the Resident's stay at the Facility ***;
>
>　　　　(c) the services rendered for any condition, and any dispute arising out of

the diagnosis, treatment, or care of the Resident;

(d) disputes involving amounts in controversy greater than $150,000; or

(e) disputes regarding interpretation of this Rider[.]"

Moreover, the Arbitration Rider stated it would be governed by and interpreted under the United States Arbitration Act (9 U.S.C. § 1 *et seq.* (2018)). As to fees and costs, the Arbitration Rider provided the following:

"7. Facility will be responsible for payment of the arbitrator's fees and costs associated with the arbitration.

8. Facility will pay up to $5,000 of the Resident's attorneys' fees and/or costs associated with the arbitration.

9. Facility will bear its own attorneys' fees and costs associated with the arbitration."

Additionally, if arbitration is not allowed by law and the dispute is brought in court, the Arbitration Rider provided, "Facility will be responsible for the Resident and/or Responsible Party's court costs and up to $5,000 of the Resident and/or Responsible Party's attorneys' fees. Facility will bear its own costs and attorneys' fees." Last, the Arbitration Rider had a severability clause, which stated the following: "In the event a court having jurisdiction finds any portion of this Rider unenforceable, that portion shall not be effective and the remainder of the Rider shall remain effective."

¶ 6    In April 2021, plaintiff filed a complaint against the Loft seeking to recover damages for her alleged injuries from the fall and asserting the Loft breached its duty of care in 18 different ways, including violating federal regulations and the Nursing Home Care Act (Care Act) (210 ILCS 45/1-101 *et seq.* (West 2020)).

¶ 7    In June 2022, the Loft filed a motion to stay and compel arbitration pursuant to the terms of the Arbitration Rider. The Loft attached a copy of the printed Contract and the Arbitration Rider. It also included a supporting affidavit by Tim Wiley, the Loft's regional director of operations. With the motion, the Loft also filed a supporting memorandum.

¶ 8    The deposition of Mary Andrews, the Loft's social services director, was taken on August 31, 2021. Andrews's relevant testimony is discussed in the analysis section.

¶ 9    Plaintiff filed a response to the Loft's motion to compel arbitration asserting the motion should be denied because (1) the Loft violated federal nursing home regulations (42 C.F.R. § 483.70(n) (2019)), (2) plaintiff lacked the mental capacity to sign the Arbitration Rider, (3) the Arbitration Rider is procedurally unconscionable, and (4) the Arbitration Rider is substantively unconscionable. Plaintiff attached her own affidavit noting the prescribed medication she had taken the morning of September 9, 2020. She also attached the transcript of Andrews's deposition and the affidavit of Dr. David Seignious, who averred it was unlikely plaintiff had sufficient ability or capacity to understand and agree to the Contract and Arbitration Rider.

¶ 10    The Loft filed a reply, which attached, *inter alia*, the affidavit of Dr. Steven Selznick. Based on his review of the materials provided, Dr. Selznick opined to a reasonable degree of medical probability plaintiff was not mentally incapacitated. He stated she had the mental capacity to understand the admissions process; understand the terms of the consents, authorizations, and agreements presented to her; and enter into contracts on her own behalf on September 9, 2020. The Loft also attached to the reply screenshots of the admission documents from an iPad.

¶ 11    On August 4, 2022, the circuit court held a hearing on the Loft's motion to compel arbitration. On September 7, 2022, the court entered its written order granting the Loft's motion

to stay and compel arbitration. The court found plaintiff failed to demonstrate her mental incapacity, compliance with the federal regulations did not determine whether the Arbitration Rider was enforceable or not, and the unconscionability claims should be determined by the arbitrator pursuant to the Arbitration Rider's delegation clause.

¶ 12        On October 3, 2022, plaintiff filed a motion to reconsider, citing *Calusinski v. Alden-Poplar Creek Rehabilitation & Health Care Center, Inc.*, 2022 IL App (1st) 220508, ¶¶ 10, 16, in which the reviewing court found the arbitration agreement was substantively unconscionable and thus unenforceable because it waived the plaintiff's right to attorney fees under the Care Act without adequate consideration from the nursing home defendants. The Loft filed a response, distinguishing the agreement in *Calusinski* and attaching the arbitration agreement that was at issue in *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 27, 976 N.E.2d 344, where the supreme court concluded the nursing home resident's promise to arbitrate, even if not met with a reciprocal promise to arbitrate by the defendant, was supported by consideration. Plaintiff filed a reply addressing the caselaw cited by the Loft. Last, the Loft filed as persuasive authority this court's unpublished decision in *Long v. Loft Rehabilitation & Nursing of Canton, LLC*, 2022 IL App (4th) 220649-U. There, we found defendant could enforce the arbitration agreement and then concluded "all remaining issues relating to the validity, enforceability, and scope of the agreement, including unconscionability, are subject to arbitration" pursuant to the delegation clause. *Long*, 2022 IL App (4th) 220649-U, ¶¶ 37, 47.

¶ 13        In January 2023, the circuit court held a hearing on plaintiff's motion to reconsider. On February 3, 2023, the court entered a written order granting plaintiff's motion to reconsider and denying the Loft's motion to compel arbitration. The court found the Arbitration Rider was substantively unconscionable. It noted the Arbitration Rider limited the payment of plaintiff's

attorney fees and/or costs to $5000 in contravention of section 3-602 of the Care Act (210 ILCS 45/3-602 (West 2020)). The court further found the Loft's obligation to pay plaintiff's attorney fees and/or costs up to $5000 was not sufficient consideration for plaintiff's waiver of costs and attorney fees because plaintiff could easily incur much more than that amount in attorney fees alone.

¶ 14 As to the other issues, the circuit court found it need not address procedural unconscionability, except to note the following. With its original order, the court had been persuaded by defendant's argument the presumption of mental capacity to enter into a contract for admission to a long-term facility under section 2-202(a) of the Care Act (210 ILCS 45/2-202(a) (West 2020)) applied to the Arbitration Rider and the presumption could only be overcome if plaintiff had been adjudicated a "[p]erson with a disability" within the meaning of section 11a-2 of the Probate Act of 1975 (755 ILCS 5/11a-2 (West 2020)), or unless a petition for such an adjudication was pending in an Illinois circuit court. The court pointed out it had made its finding on mental capacity before the December 22, 2022, opinion in *Sanders v. Oakbrook Healthcare Centre, Ltd.*, 2022 IL App (1st) 221347. As such, any question regarding plaintiff's mental capacity would require a summary determination by the court in accordance with section 2(a) of the Uniform Arbitration Act (710 ILCS 5/2(a) (West 2020)). However, given the reconsideration of its decision pursuant to *Calusinski*, the court found the summary determination was not necessary.

¶ 15 On March 1, 2023, defendant filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). Accordingly, this court has jurisdiction under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). See *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11, 761 N.E.2d 724, 730 (2001) (noting a circuit court's order compelling arbitration

- 6 -

is injunctive in nature and thus subject to interlocutory appeal under Rule 307(a)(1)).

¶ 16                                    II. ANALYSIS

¶ 17         The Loft challenges the circuit court's denial of its motion to stay and compel arbitration. The parties agree the appropriate standard of review is *de novo*. When the circuit court has not held an evidentiary hearing on a motion to compel arbitration, we review the court's ruling *de novo*. *Watkins v. Mellen*, 2016 IL App (3d) 140570, ¶ 12, 54 N.E.3d 879. Moreover, a review of a determination of whether a contract or a portion of a contract is unconscionable is *de novo*. *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 22, 857 N.E.2d 250, 264 (2006).

¶ 18         In its appellant brief, the Loft asserts the circuit court erred by denying its motion to compel arbitration because the Arbitration Rider has a delegation clause or, alternatively, the Arbitration Rider was not substantively unconscionable. Plaintiff contends the Arbitration Rider is both substantively and procedurally unconscionable. She further argues, if this court finds the Arbitration Rider was not unconscionable, then we should remand the matter for a summary determination on whether she had the mental capacity to enter into the Arbitration Rider, as the circuit court noted in its order on plaintiff's motion to reconsider.

¶ 19         We begin by examining the proper order for addressing the parties' issues on appeal. "Even the most sweeping delegation cannot send the contract-formation issue to the arbitrator, because, until the court rules that a contract exists, there is simply no agreement to arbitrate." *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022). If a contract does exist, "then an arbitration clause may delegate all other issues, including defenses, to the arbitrator." *K.F.C.*, 29 F.4th at 837. Mental capacity goes to contract formation and is a threshold issue. See *Spahr v. Secco*, 330 F.3d 1266, 1273 (10th Cir. 2003) (finding the plaintiff's claim he lacked the mental capacity to enter into an enforceable contract concerned the making of the agreement). If plaintiff

- 7 -

lacked the mental capacity to enter into a contract, then it is unnecessary to determine whether a delegation clause exists and/or the contract is unconscionable. As such, we first address the issue of plaintiff's mental capacity.

¶ 20                                   A. Mental Capacity

¶ 21         Plaintiff contends she is entitled to remand for a summary disposition on the issue of her mental capacity based on the recent decision of *Sanders*, 2022 IL App (1st) 221347. The Loft disagrees.

¶ 22         In its initial order, the circuit court found the following:

> "After reviewing both affidavits as well as the other affidavits submitted by the parties, this Court finds that the Plaintiff has failed to overcome the presumption of mental capacity to enter into a contract for admission to a long term facility under Section 202(a) of the [Care Act]."

At the hearing on the motion to reconsider, plaintiff challenged the court's finding about her mental capacity asserting the presumption in section 2-202(a) of the Care Act (210 ILCS 45/2-202(a) (West 2020)) was the same as the common law one and she had presented ample evidence to overcome the presumption of capacity. The Loft objected, noting plaintiff had not raised the issue in her motion to reconsider. In its February 2023 order on plaintiff's motion to reconsider, the court did not rule on the Loft's objection to plaintiff's challenge to the court's finding of mental capacity. The court did state it had been persuaded in rendering its original finding of mental capacity by the Loft's argument the presumption of capacity in section 2-202(a) of the Care Act (210 ILCS 45/2-202(a) (West 2020)) could only be rebutted if one of the two exceptions set forth in that section applied. It further found, based on *Sanders*, any question regarding plaintiff's mental capacity would require a summary determination by it in accordance with section 2 of the Uniform

Arbitration Act (710 ILCS 5/2(a) (West 2020)).

¶ 23        The problem with the circuit court's finding in ruling on the motion to reconsider is the Loft never made the argument regarding the rebuttal of the presumption of capacity and the court found, as noted above, plaintiff did not overcome the presumption of capacity based on the supporting materials. In its initial order, the court made no mention of the two exceptions to the presumption of capacity in section 2-202(a). Thus, we do not find the court made an error of law in its initial finding plaintiff failed to overcome the presumption of capacity.

¶ 24        As to the *Sanders* decision, the circuit court in that case had denied the defendants' motion to dismiss and compel arbitration but found a genuine issue of fact existed as to whether the plaintiff lacked the capacity to enter into the admission contract containing the arbitration provision. *Sanders*, 2022 IL App (1st) 221347, ¶ 15. However, in this case, the court heard oral arguments, considered the parties' supporting materials in light of the presumption in section 2-202(a), and made the factual determination plaintiff failed to overcome the presumption of mental capacity. Moreover, neither party requested to present evidence at the court's August 2022 hearing. " 'A party cannot sit idly by while the trial court undertakes a course of action and then allege error in that regard.' " *Meeks v. Great America, LLC*, 2017 IL App (2d) 160655, ¶ 14, 79 N.E.3d 826 (quoting *Tokar v. Crestwood Imports, Inc.*, 177 Ill. App. 3d 422, 434, 532 N.E.2d 382, 390 (1988)). Since the circuit court did not appear to apply the law incorrectly in its original order and the parties chose not to present evidence at the August 2022 hearing on the Loft's motion to compel arbitration, we find plaintiff is not entitled to an evidentiary hearing on the issue of her mental capacity, and the circuit court's finding of mental capacity stands.

¶ 25                                B. Delegation Clause

¶ 26        Since the circuit court's finding plaintiff had the mental capacity to enter into a

contract stands, we address the Loft's arguments. The Loft first asserts the Arbitration Rider's delegation clause assigns the question of unconscionability to the arbitrator. Plaintiff agrees a delegation clause exists but contends unconscionability is a matter for the circuit court and not the arbitrator.

¶ 27 Contrary to the parties' assertion, we find the Arbitration Rider does not contain a delegation provision. "The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the question of arbitrability, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." (Emphasis and internal quotation marks omitted.) *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). In support of its argument the Arbitration Rider contains a delegation clause, the Loft cited several cases, some of which set forth the actual language of the arbitration agreement's delegation clause. In one case, the parties' agreement stated as follows:

> "[T]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." (Internal quotation marks omitted.) *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66 (2010).

In the other case, the delegation clause stated the following:

> " 'The arbitrator shall have the sole authority to rule on his/her own jurisdiction, including any challenges or objections with respect to the existence, applicability, scope, enforceability, construction, validity and interpretation of this Policy and any agreement to arbitrate a Covered Dispute.' " *Kubala v. Supreme Production*

*Services, Inc.*, 830 F.3d 199, 204 (5th Cir. 2016).

Last, in a recent unpublished decision by this court, the delegation clause was in a separate paragraph entitled " 'Arbitrator's Authority' " and stated the following:

> " 'The arbitrator has the sole jurisdiction to resolve all disputes among the parties, including wrongful death claims and *any disputes about the signing, validity, enforceability, scope, applicability, interpretation, severability, and waiver of this Agreement or competency of the parties*.' " (Emphasis in original.)
>
> *Long*, 2022 IL App (4th) 220649-U, ¶ 9.

¶ 28        In this case, the Arbitration Rider only provides disputes regarding the interpretation of the Arbitration Rider shall be submitted to arbitration. Unlike the agreements in the cases cited by the Loft, the Arbitration Rider does not expressly state the enforceability, applicability, or validity of the Arbitration Rider is to be decided by the arbitrator. Under its own definitions, the Arbitration Rider's language "all claims or controversies arising out of or in any way relating to the *Agreement*" noted by the Loft refers to the Contract and not the Arbitration Rider itself. Here, the clear and unmistakable language delegating the determination of enforceability or the matter of unconscionability of the Arbitration Rider to the arbitrator is lacking. Given the Arbitration Rider's clear language, the issue of delegation is not a matter of statutory construction for the arbitrator, as suggested by the Loft. Accordingly, we find the Arbitration Rider did not contain a clear and unmistakable clause delegating any matters generally for a court to decide to the arbitrator and the circuit court had the authority to determine unconscionability. As such, we need not address plaintiff's argument unconscionability cannot be delegated to an arbitrator.

¶ 29                    C. Substantive Unconscionability

¶ 30 The Loft contends, if a delegation clause does not exist, then the circuit court erred by finding the Arbitration Rider was unenforceable because it was substantively unconscionable. An arbitration agreement may be invalidated by a state law contract defense of general applicability, such as fraud, duress, or unconscionability. *Carter*, 2012 IL 113204, ¶ 18. Plaintiff asserts *Calusinski* is directly on point and the court properly found the Arbitration Rider was substantively unconscionable.

¶ 31 Our supreme court has defined substantive unconscionability as follows:

" 'Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. [Citation.] Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity.' " *Kinkel*, 223 Ill. 2d at 28 (quoting *Maxwell v. Fidelity Financial Services, Inc.*, 907 P.2d 51, 58 (Ariz. 1995)).

Here, the circuit court agreed with plaintiff the Arbitration Rider was so one-sided as to be oppressive because it limited her recovery of attorney fees and/or costs to $5000 in violation of section 3-602 of the Care Act (210 ILCS 45/3-602 (West 2020)). The court found the payment of up to $5000 in attorney fees was insufficient consideration for the waiver of her statutory right to recover fees. We note the Arbitration Rider has express terms addressing the payment of attorney fees, and thus this case is distinguishable from our decision in *Mason v. St. Vincent's Home, Inc.*, 2022 IL App (4th) 210458, ¶ 47, 199 N.E.3d 346, where we declined to address the waiver of attorney fees under the Care Act and found the matter was for an arbitrator to initially decide because interpretation of the arbitration clause was necessary.

¶ 32        As to the Arbitration Rider in this case, we begin our analysis by noting the facts of this case are distinguishable from *Calusinski*, 2022 IL App (1st) 220508, ¶ 16, where the reviewing court concluded an arbitration agreement was substantively unconscionable and unenforceable because it waived the plaintiff's right to attorney fees under the Care Act without adequate consideration by the defendants. There, the arbitration agreement provided the plaintiff " 'waive[d] any and all costs and attorney's fees under the Illinois Nursing Home Care Act.' " *Calusinski*, 2022 IL App (1st) 220508, ¶ 13. Thus, the agreement banned the award of statutory attorney fees in violation of Illinois law. *Calusinski*, 2022 IL App (1st) 220508, ¶ 13. The reviewing court explained the defendants did not give sufficient consideration for the waiver of statutory fees because the agreement permitted the defendants to litigate claims against the plaintiff for nonpayment in a court of law but did not allow the plaintiff to litigate any claims against the defendants in court, including a total ban on class action suits. *Calusinski*, 2022 IL App (1st) 220508, ¶ 14. Moreover, the agreement gave only the defendants the right to choose a substitute mediator and/or arbitrator in the event the primary mediator was unavailable or rejected the parties' mediation. *Calusinski*, 2022 IL App (1st) 220508, ¶ 14. Finally, the agreement stated the following:

> "defendants would pay 'up to a maximum of $2,000' for the 'mediator and/or arbitrator's fees and other reasonable costs associated with mediation and arbitration' but that any additional costs for mediation and/or arbitration were to be 'borne equally by the parties' and that each party was 'responsible for their own attorney fees and costs.' " *Calusinski*, 2022 IL App (1st) 220508, ¶ 14.

The reviewing court noted it was not guaranteed the defendants would have to pay the entire $2000 for mediation/arbitration costs and the plaintiff could easily incur more than that amount in

- 13 -

attorney fees alone. *Calusinski*, 2022 IL App (1st) 220508, ¶ 14.

¶ 33        In this case, the Arbitration Rider provides the Loft is to pay up to $5000 of plaintiff's attorney fees and/or costs associated with the arbitration. Under the Care Act, plaintiff would only be entitled to attorney fees if she prevailed in a claim against the Loft. See *Carter*, 2012 IL 113204, ¶ 26. However, under the aforementioned provision of the Arbitration Rider, plaintiff is entitled to a portion of her attorney fees even if the Loft prevails. As such, the contractual attorney fees provision supplements the statutory fee provision, constituting a benefit to plaintiff and a detriment to the Loft. See *Carter*, 2012 IL 113204, ¶ 26. Moreover, the Arbitration Rider provides the Loft will pay for the arbitrator's fees and costs associated with the arbitration and the resident can select the location of the arbitration, both of which are also a benefit to plaintiff and a detriment to the Loft. See *Carter*, 2012 IL 113204, ¶ 26. Additionally, the Loft waived its own ability to recover attorney fees if it prevailed on a claim.

¶ 34        In *Carter*, 2012 IL 113204, ¶ 19, the supreme court addressed the invalidation of an arbitration agreement based on the state law contract defense of lack of mutuality of obligation. It explained the principles of contract law do not require the values the contracting parties exchanged be equivalent. *Carter*, 2012 IL 113204, ¶ 24. The supreme court quoted the following language: " 'state courts have concluded that an arbitration clause need not be supported by equivalent obligations.' " *Carter*, 2012 IL 113204, ¶ 24 (quoting *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 180 (3d Cir. 1999)). It further noted we will not inquire into the adequacy of the consideration to support a contract. *Carter*, 2012 IL 113204, ¶ 24. " '[A]dequacy of the consideration is within the exclusive dominion of the parties where they contract freely and without fraud.' " *Carter*, 2012 IL 113204, ¶ 24 (quoting *Ryan v. Hamilton*, 205 Ill. 191, 198, 68 N.E. 781, 782 (1903)). With contract provisions similar to the ones at issue in this case, including

the promise to pay $5000 in attorney fees, the supreme court concluded the plaintiff's promise to arbitrate, even if not met with a reciprocal promise to arbitrate by the defendant, was supported by consideration.

¶ 35            No evidence of fraud was presented in this case, and plaintiff had the ability to decline to enter into the Arbitration Rider. In fact, the Arbitration Rider in bold print and above the signature line stated the following: "The undersigned acknowledges that he or she has been encouraged to discuss this [Arbitration Rider] with an attorney." Moreover, unlike in *Carter*, the Arbitration Rider was reciprocal, requiring the Loft to also arbitrate the enumerated claims. Thus, the supreme court's decision in *Carter* supports a finding of adequate consideration for the waiver of attorney fees over $5000.

¶ 36            Additionally, this case is distinguishable from *Turner v. Concord Nursing & Rehabilitation Center, LLC*, 2023 IL App (1st) 221721, cited by plaintiff on appeal. There, the arbitration rider provided the plaintiff " 'shall not be entitled to Statutory Attorney Fees, including those delineated in the Illinois Nursing Home Care Act' " and limited the plaintiff's damages to $250,000. *Turner*, 2023 IL App (1st) 221721, ¶ 28. Moreover, only the plaintiff waived his rights to statutory attorney fees. *Turner*, 2023 IL App (1st) 221721, ¶ 30. The agreement did provide the defendant would pay up to $3000 of the plaintiff's arbitration or mediation costs and out-of-pocket expenses for a claim brought against the defendant, regardless of the outcome. *Turner*, 2023 IL App (1st) 221721, ¶ 41. Nonetheless, the court concluded, "[b]ecause of the limitation on damages and that only [the plaintiff] waived his right to attorney's fees, the agreement was not supported by adequate consideration." *Turner*, 2023 IL App (1st) 221721, ¶ 42.

¶ 37            In this case, the Arbitration Rider did not limit the amount of damages plaintiff could be awarded, and the Loft was to pay its own attorney fees and costs and be responsible for

all of the arbitrator's fees and costs. As such, the bases for finding a lack of consideration in *Turner* are not present here. Moreover, the terms of the Arbitration Rider are not clearly one-sided like those in *Turner.*

¶ 38 Accordingly, we find sufficient consideration was given for the waiver of attorney fees greater than $5000 for a successful claim of a violation of the Care Act. As such, we find the circuit court erred by finding the Arbitration Rider was substantively unconscionable.

¶ 39 D. Procedural Unconscionability

¶ 40 Plaintiff contends the circuit court's judgment should be affirmed because the Arbitration Rider was procedurally unconscionable. The Loft disagrees. In its order on the motion to reconsider, the circuit court suggested, if it had not found the Arbitration Rider substantively unconscionable, it would have held a summary disposition on mental capacity and procedural unconscionability. We again note plaintiff never requested an evidentiary hearing on those issues, and as such, she cannot now complain of error for failing to have an evidentiary hearing. See *Meeks*, 2017 IL App (2d) 160655, ¶ 14. Thus, we do not find remand on the issue of procedural unconscionability appropriate and address the issue on the merits.

¶ 41 Our supreme court has defined procedural unconscionability as follows:

" 'Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice. [Citations.] Factors to be considered are all the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print; both the conspicuousness of the clause and the negotiations relating to it are important, albeit not conclusive factors in determining

the issue of unconscionability. [Citation.] To be a part of the bargain, a provision limiting the defendant's liability must, unless incorporated into the contract through prior course of dealings or trade usage, have been bargained for, brought to the purchaser's attention or be conspicuous. *** Nor does the mere fact that both parties are businessmen justify the utilization of unfair surprise to the detriment of one of the parties ***. [Citation.] This requirement that the seller obtain the knowing assent of the buyer "does not detract from the freedom to contract, unless that phrase denotes the freedom to impose the onerous terms of one's carefully drawn printed document on an unsuspecting contractual partner. Rather, freedom to contract is enhanced by a requirement that both parties be aware of the burdens they are assuming. The notion of free will has little meaning as applied to one who is ignorant of the consequences of his acts." [Citations.]' " *Kinkel*, 223 Ill. 2d at 23-24 (quoting *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 989-90, 408 N.E.2d 403, 410 (1980)).

¶ 42 In her response to the motion to compel, plaintiff alleged the Arbitration Rider was procedurally unconscionable because no one from the Loft ever explained to her (1) what arbitration was, (2) the terms of the Arbitration Rider, and (3) the rights she would be giving up by signing the Arbitration Rider. Moreover, no one explained to her the Arbitration Rider was voluntary and not a condition of her admission to the Loft's facility. Plaintiff also noted the lack of training for the Loft's employee, Andrews, who explained the admission documents to plaintiff.

¶ 43 In support of her argument, plaintiff again cites *Turner*, 2023 IL App (1st) 221721, ¶ 25, where the reviewing court found the arbitration agreement between a nursing home and a resident was procedurally unconscionable. In reaching that conclusion, the court noted the

following reasons for its conclusion: the bulk and detail of the admissions packet (120 pages), the "pretense of attorney review," the resident's general health and mental agility at the time of his readmission to the facility, and the nature of the arbitration rider as an adhesion contract. *Turner*, 2023 IL App (1st) 221721, ¶ 25. At the time the resident signed the admissions contract, his niece described the resident as confused and having difficulty reading, comprehending, and speaking. *Turner*, 2023 IL App (1st) 221721, ¶ 22. Additionally, the arbitration rider stated, " 'the arbitration agreement is not a condition to the admission,' " but also noted the arbitration agreement was " 'an integral part of the Resident's underlying admission and/or continued residency.' " *Turner*, 2023 IL App (1st) 221721, ¶ 23.

¶ 44    In this case, no evidence was presented plaintiff was actually suffering from confusion or had difficulty reading or comprehending things. Dr. Seignious's opinion was based, in part, on the *potential* side effects of the medications plaintiff was taking on September 9, 2020. He did not identify any medical conditions plaintiff had that would cause confusion or difficulty with reading and/or comprehension. He also only reviewed plaintiff's medical records.

¶ 45    As to the admissions documents in this case, they were only around 40 pages printed, and plaintiff viewed and signed them on an iPad. The version on the iPad is not identical to the printed version in the record on appeal, and an iPad provides the ability to change the size of the font. On the iPad version contained in the record on appeal, the font is much bigger and easier to read. The iPad version also has an area where the resident can choose to accept or decline the Arbitration Rider. Moreover, Andrews's deposition testimony indicated residents did not have to immediately sign the forms and were free to take as long as he or she would like to complete the forms. As such, plaintiff could take extra time to review the document if she so chose, including time to consult an attorney. Additionally, in her deposition, Andrews stated she always encourages

residents to consult with an attorney about the Arbitration Rider. Thus, we disagree with plaintiff the provision indicating the resident was encouraged to discuss the Arbitration Rider with an attorney is disingenuous in this case.

¶ 46 Further, the language of the Arbitration Rider in no way indicates it is an integral part of plaintiff's admission to the Loft's facility. The agreement does not contain language like the one in *Turner*. Here, the electronic program on the iPad provided plaintiff with the option of declining the Arbitration Rider. Accordingly, we find the circumstances constituting procedural unconscionability in *Turner* are distinguishable from the circumstances in this case.

¶ 47 Plaintiff also contends the Loft did not have anyone explain (1) what arbitration was, (2) the terms of the Arbitration Rider, and (3) the rights she would be giving up by signing. However, in cases where consumers sign contracts, courts generally hold the consumer is charged with knowledge of and assent to the terms and conditions of the contract he or she signed. *Zuniga v. Major League Baseball*, 2021 IL App (1st) 201264, ¶ 28, 196 N.E.3d 12 (citing *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 150, 847 N.E.2d 99, 108 (2006)). In *Kinkel*, 223 Ill. 2d at 26, the arbitration provision was contained in the fine print of the terms and conditions on the back of a preprinted cellular service agreement filled with text, and the supreme court held it was not procedurally unconscionable because the plaintiff had signed the contract, initialed an acknowledgement on it she had read the terms and conditions, and had them in her possession to read if she had chosen to do so.

¶ 48 Here, the Arbitration Rider stated, in pertinent part:

"The undersigned acknowledges that he or she has been encouraged to discuss this Rider with an attorney.

By signing below you acknowledge that you have reviewed this Rider and

understand it." (Emphasis omitted.)

Plaintiff signed the agreement. She cites no case law or statute that supports her assertion a representative of the Loft had to explain what arbitration is, the terms of the Arbitration Rider, and the rights she was giving up by signing the agreement. In her deposition, Andrews stated she was available to answer questions, and she would seek assistance if she did not know the answer. Given Andrews would seek help if needed to answer questions and the Arbitration Rider encouraged the resident to seek legal counsel, we fail to see how Andrews's lack of knowledge about arbitration supported a finding of procedural unconscionability.

¶ 49    In this case, the Arbitration Rider was clearly labeled, and the resident had to accept or decline it separately from the Contract. Moreover, the language of the Arbitration Rider was straightforward and made clear both parties were waiving their rights to a jury trial. No evidence was presented plaintiff was rushed through the admissions paperwork. Also, the circumstances surrounding the signing of the Arbitration Rider do not suggest coercion or deception. Accordingly, we do not find the Arbitration Rider and surrounding circumstances constitute procedural unconscionability.

¶ 50    Since we have found the Arbitration Rider was valid and not unconscionable, the circuit court's original order granting the Loft's motion to compel arbitration was proper. However, that order must be amended to reflect unconscionability is not a matter for the arbitrator since it was a matter for the court in this case.

¶ 51    III. CONCLUSION

¶ 52    For the reasons stated, we reverse the Fulton County circuit court's February 3, 2023, order granting plaintiff's motion to reconsider. We remand the cause and direct the court to amend its September 7, 2022, order by striking the language "and any issues concerning

- 20 -

unconscionability of the arbitration agreement" from the top of page six.

¶ 53             Reversed and remanded with directions.

*Mulligan v. Loft Rehabilitation & Nursing of Canton, LLC*, 2023 IL App (4th) 230187

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Fulton County, No. 21-LL-04; the Hon. Thomas B. Ewing, Judge, presiding. |
| **Attorneys for Appellant:** | Donna J. Fudge, of Fudge Broadwater, P.A., of St. Petersburg, Florida, for appellant. |
| **Attorneys for Appellee:** | Patricia L. Gifford and William Steinman, of Law Offices of Steven J. Malman & Associates P.C., of Champaign, and Leslie J. Rosen, of Leslie J. Rosen Attorney at Law, P.C., of Chicago, for appellee. |