2024 IL App (4th) 230513

NO. 4-23-0513

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 1, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| LUANN MIKOFF, Special Administrator of the Estate of | ) | Appeal from the |
| Bonnie Stone, Deceased, | ) | Circuit Court of |
|       Plaintiff-Appellant, | ) | Jersey County. |
|       v. | ) | No. 22LA11 |
| UNLIMITED DEVELOPMENT, INC., and | ) | |
| JERSEYVILLE MANOR, | ) | Honorable |
|       Defendants-Appellees. | ) | Allison Lorton, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justice Harris specially concurred, with opinion.
Presiding Justice Turner concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1       In July 2022, plaintiff Luann Mikoff, as special administrator of the estate of her late mother Bonnie Stone (decedent), filed a complaint against defendants, Unlimited Development, Inc., and Jerseyville Manor, a skilled nursing facility (Facility), alleging that defendants were responsible for decedent's premature death from COVID-19 contracted while under their care. In September 2022, defendants filed a motion to stay the proceedings and compel arbitration pursuant to the terms of the parties' arbitration agreement. In January 2023, the Jersey County circuit court entered a written order granting defendants' motion to compel arbitration. Plaintiff's motion to vacate and set aside that order was denied in May 2023.

¶ 2        Plaintiff now appeals, contending (1) this court has jurisdiction of her appeal, (2) the circuit court erred by not holding an evidentiary hearing, (3) the arbitration agreement was not enforceable once the decedent passed away, (4) the arbitration agreement's language is vague and ambiguous, (5) the court applied the wrong version of federal nursing home regulations, (6) only parties to the arbitration agreement may be bound by it, (7) the arbitration agreement was procedurally unconscionable, and (8) the arbitration agreement was substantively unconscionable.

¶ 3        For the reasons stated below, we affirm the circuit court's referral of decedent's claims under the Survival Act (755 ILCS 5/27-6 (West 2022)) to arbitration, but we reverse the referral of the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2022)) claims to arbitration and remand for further proceedings as to those claims.

¶ 4                                I. BACKGROUND

¶ 5        On September 7, 2019, decedent was admitted to the Facility, which was owned and/or operated by defendant, Unlimited Development, Inc. Plaintiff was decedent's agent under both medical and financial powers of attorney, and she signed the documents in her representative capacity. The documents included both an admissions contract and arbitration agreement; the latter began by stating:

> "Without limiting any rights set forth in other provisions of this AGREEMENT, any and all disputes arising hereunder shall be submitted to binding arbitration and not to a court for determination. Arbitration shall commence after written notice is given from either party to the other, such arbitration shall be accomplished expeditiously in the county and state where the property which is the subject of this AGREEMENT is located, and shall be conducted in accordance with the rules of the American Arbitration Association ('AAA')."

Elsewhere, the arbitration agreement further stated:

"Notwithstanding the parties['] intent to submit any controversy or claim arising out of or relating to this AGREEMENT or any other document signed or initialed in connection with this AGREEMENT to arbitration, in the event that a court of competent jurisdiction shall determine or a relevant law shall provide that a particular dispute is not subject to the arbitration provisions of this Section, then the parties agree to the following provisions: ***."

The admission contract plaintiff signed along with the arbitration agreement provided, in pertinent part, the following: "The term of the contract shall commence on the day the Resident enters the Facility and terminate the day the Resident is discharged, subject however to the following provisions ***."

¶ 6        On August 9, 2020, the 91-year-old decedent was hospitalized with COVID-19; she died on August 17, 2020. In July 2022, plaintiff filed a complaint against defendants, seeking to recover for decedent's death. In the complaint's introduction, plaintiff stated she was bringing her cause of action in accordance with the Wrongful Death Act (*id.*) and the Survival Act (755 ILCS 5/27-6 (West 2022)). Plaintiff asserted four separate counts asserting claims of negligence and willful and wanton misconduct, two against each defendant. The counts contended defendants owed a duty to the decedent based on the Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2020)) and the Illinois Administrative Code.

¶ 7        In September 2022, defendants filed a motion to compel arbitration and stay the proceedings, based on the terms of the arbitration agreement. Defendants attached a copy of the admission contract, the arbitration agreement, a portion of the decedent's medical power of

attorney, and plaintiff's complaint. The motion also included a supporting affidavit executed by Dana Bainter, the Facility's administrator, and a supporting memorandum.

¶ 8 Plaintiff argued in response that the motion should be denied because (1) execution of the arbitration agreement cannot be made part of the signing of the admissions document, (2) the arbitration agreement is overly vague and ambiguous, (3) a healthcare power of attorney does not grant authority to execute an agreement to arbitrate, and (4) defendants failed to establish the arbitration agreement was substantively and procedurally conscionable. In the alternative, plaintiff requested defendants' motion be deferred until the completion of discovery. Plaintiff also submitted a supplemental filing in opposition to arbitration, which is not included in the record on appeal.

¶ 9 Defendants filed a reply, which attached, *inter alia*, the decedent's complete medical power of attorney and her financial power of attorney, both of which named plaintiff as decedent's agent.

¶ 10 On January 19, 2023, the circuit court held a hearing on defendants' motion to compel arbitration. Neither party presented testimony, but defendants' counsel noted the documents attached to their pleadings. On January 24, 2023, the court entered its written order granting defendants' motion to compel arbitration and stay the proceedings. The order required plaintiff to arbitrate any and all claims against the defendants and stayed the proceedings during the pendency of arbitration. Specifically, the court found an arbitration agreement can be part of a nursing home admission contract, and matters involving scope or interpretation of the arbitration agreement have been delegated to the arbitrator.

¶ 11 On February 22, 2023, plaintiff filed a motion to vacate and set aside the order staying the proceedings and referring all claims to arbitration. Plaintiff asserted that the circuit

- 4 -

court's order was erroneous for the following reasons: (1) the arbitration agreement was procedurally and substantively unconscionable, (2) the healthcare power of attorney did not give plaintiff the power to waive the decedent's right to a jury trial, (3) the arbitration agreement violates a federal nursing home regulation (42 C.F.R. § 483.70 (2016)), (4) the arbitration agreement was impermissibly overbroad in its attempt to limit the court's authority to interpret the same, and (5) the arbitration agreement was vague and ambiguous and its terms must be strictly construed against defendants. Plaintiff also pointed out that paragraph A of the admission contract stated it terminated on the date the resident is discharged from the facility, which she argued was decedent's date of death (August 17, 2020). Plaintiff argued that the termination of the admission contract would also end the enforceability of the arbitration agreement. Defendants filed a response to plaintiff's motion to vacate. Plaintiff replied to defendants' arguments, and defendants again responded.

¶ 12 On May 12, 2023, the circuit court held a hearing on plaintiff's motion to vacate, after which the court found the arbitration agreement was properly formed and an evidentiary hearing was not required. The court then entered a written order denying plaintiff's motion.

¶ 13 On June 8, 2023, plaintiff filed a notice of appeal from both the January 24, 2023, and May 12, 2023, orders. Our jurisdiction of the appeal is addressed in the analysis section.

¶ 14 The resolution of this case requires us to address several different issues. Aside from defendants' motion to dismiss the appeal and some preliminary matters, the main issues for resolution here are as follows: (1) whether, under Illinois law, has a contract for arbitration of plaintiff's claims been formed; and (2) if so, under federal law, who resolves questions about the expiration, interpretation, and application of the arbitration agreement, the circuit court or the arbitrator?

¶ 15                              II. ANALYSIS

¶ 16                        A. Motion to Dismiss the Appeal

¶ 17          Defendants filed a motion to dismiss plaintiff's appeal, asserting that (1) plaintiff failed to comply with Illinois Supreme Court Rule 307 (eff. Nov. 1, 2017) and (2) this court lacks jurisdiction to address the appeal. Plaintiff filed an objection. We took the motion with the case.

¶ 18          Under Rule 307(a), "the appeal must be perfected within 30 days from the entry of the interlocutory order," and an Illinois Supreme Court Rule 328 (eff. July 1, 2017) supporting record "must be filed in the Appellate Court within the same 30 days unless the time for filing the Rule 328 supporting record is extended by the Appellate Court or any judge thereof." Ill. S. Ct. R. 307(a) (Nov. 1, 2017); see 5 ILCS 70/1.11 (West 2022) (due date cannot fall on a Saturday, Sunday, or legal holiday). Thus, the supporting record should have been filed on or before Monday, June 12, 2023. On June 15, 2023, plaintiff filed a motion for an extension of time to file the supporting record, which this court granted, allowing plaintiff until August 4, 2023, to file the supporting record. Plaintiff filed the supporting record on July 21, 2023.

¶ 19          While our supreme court has stated its rules are not suggestions and must be followed, both the supreme court and this court have exercised discretion in determining whether an appeal should be dismissed for noncompliance with its rules that are not jurisdictional. See *Ittersagen v. Advocate Health & Hospitals Corp.*, 2021 IL 126507, ¶¶ 36-37 (declining to strike the appellant's brief for noncompliance with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020) because it did not hinder the court's review); *Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999) (noting that "[i]t is within this court's discretion to strike the plaintiffs' brief and dismiss the appeal for failure to comply with Rule 341"). Defendants do not cite any authority indicating the timely filing of a Rule 328 supporting record is a jurisdictional requirement; the only authority they cite

- 6 -

is a 1976 special concurrence finding that Rule 307's language that " 'the record must be filed' within the designated time is necessarily mandatory," based on "[t]he former practice prior to January 1, 1964." *Block & Co. v. Storm Printing Co.*, 40 Ill. App. 3d 92, 98 (1976) (Goldberg, P.J., specially concurring). Here, plaintiff filed a request for an extension three days after the expiration of the 30-day period. Plaintiff then filed the record within the extended time period. Plaintiff's three-day delay in requesting an extension of time to file the supporting record did not hinder our review of the appeal, and, thus, we find plaintiff's noncompliance with Rule 307's time period for filing the supporting record does not warrant dismissal of her appeal.

¶ 20 Defendants also contend this court lacks jurisdiction over plaintiff's appeal because more than 30 days passed between the circuit court's January 24, 2023, order and the filing of plaintiff's notice of appeal; they further assert that the May 12, 2023, order was not an appealable order. Plaintiff disagrees, contending the appeal is possible under either Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017) or Illinois Supreme Court Rule 303 (eff. July 1, 2017).

¶ 21 "An appellate court is under a duty to consider its jurisdiction and to dismiss an appeal if jurisdiction is lacking." *Craine v. Bill Kay's Downers Grove Nissan*, 354 Ill. App. 3d 1023, 1024 (2005). Accordingly, this court must determine the question of its jurisdiction prior to deciding the appeal's merits. *Id.* We begin by examining Rule 307(a)(1).

¶ 22 Rule 307(a)(1) provides that an appeal may be taken to this court from an interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). The rule has been interpreted as follows:

"Rule 307(a)(1) permits interlocutory appeals from four types of orders: (1) orders that deny (*i.e.*, refuse) injunctions; (2) orders that create (*i.e.*, grant) injunctions; (3) orders that change the effects of (*i.e.*, modify or dissolve) existing

injunctions; and (4) orders that perpetuate the effects of (*i.e.*, refuse to modify or to dissolve) existing injunctions." *Craine*, 354 Ill. App. 3d at 1025.

Under Illinois law, an order compelling arbitration is considered an injunctive order and thus an appealable interlocutory order under category (2) of Rule 307(a)(1). *Id.* Consequently, the denial of a motion for reconsideration of an order *compelling* arbitration falls under category (4) as an order that refuses to dissolve an injunction. An order refusing to compel arbitration falls under category (1) as an order that denies an injunction. However, an order denying reconsideration of a *refusal to compel* arbitration cannot fall under category (3) or (4) because there is no preexisting injunction in place. *Id.* at 1026. In *Craine*, the Second District of the Appellate Court faced the question of whether such an order effectively denies an injunction and thus is appealable under category (2). *Id.* The court concluded that the order was not appealable. *Id.* at 1028.

¶ 23 Defendants assert the *Craine* decision should not be followed because it runs afoul of the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (2024)). In *Kindred Nursing Centers Ltd. Partnership v. Clark*, 581 U.S. 246, 251 (2017), the United States Supreme Court reaffirmed that the FAA preempts "any state rule discriminating on its face against arbitration," as well as rules that covertly accomplish the same objective. However, the *Craine* decision does not discriminate against arbitration either facially or covertly because its reasoning did not depend on the fact that the injunctive relief being sought was an order compelling arbitration. *Craine*, 354 Ill. App. 3d at 1028 (addressing "the imminent burdens of an injunction"); see *id.* at 1026-27 (examining *Baird & Warner, Inc. v. Gary-Wheaton Bank*, 122 Ill. App. 3d 136 (1984), a case involving mortgages rather than arbitration). As such, we find that *Craine* is arbitration neutral and does not run afoul of the FAA.

¶ 24　　　　In this case, the circuit court's January 24, 2023, order was an injunctive order because it granted defendants' motion to compel arbitration and stay the proceedings. Thereafter, the court's May 12, 2023, order refused to dissolve an existing injunction by denying plaintiff's motion to vacate the January 24, 2023, order. As such, both orders were appealable under Rule 307(a)(1). *Craine*, 354 Ill. App. 3d at 1025. Plaintiff's notice of appeal was filed on June 8, 2023, which was within the 30-day period for filing an appeal under Rule 307(a) for the May 12, 2023, order. Accordingly, we have jurisdiction over the appeal from the court's May 12, 2023, order and deny defendants' motion to dismiss plaintiff's appeal. Because we have jurisdiction under Rule 307(a), we need not address plaintiff's alternative argument under Rule 303.

¶ 25　　　　　　　　　　　B. Preliminary Matters

¶ 26　　　　Before reaching the merits of the issues presented, we must address two preliminary matters: (1) whether the circuit court erred by not conducting an evidentiary hearing and (2) the appropriate standard of review.

¶ 27　　　　　　　　　　　1. *Evidentiary Hearing*

¶ 28　　　　Plaintiff argues that the circuit court erred by failing to conduct an evidentiary hearing before referring this case to arbitration. Plaintiff suggests that an evidentiary hearing is required by section 2(a) of the Uniform Arbitration Act (710 ILCS 5/2(a) (West 2022)), but that section simply states that the court should "proceed summarily" if there is a dispute about the existence of an agreement to arbitrate. Plaintiff also cites section 2 of the FAA (9 U.S.C. § 2 (2024)) and federal regulations (42 C.F.R. § 483.70 (2016)), but she fails to identify what language in these provisions provides for an evidentiary hearing.

¶ 29　　　　In this case, the circuit court held a hearing on January 19, 2023, and no party at the hearing sought to present additional evidence. All parties had the opportunity to attach

supporting documents to their proceedings, but only defendants did so. After considering the parties' arguments and defendants' supporting material, the court made a summary determination. As such, we do not find plaintiff's citation to *Herns v. Symphony Jackson Square LLC*, 2021 IL App (1st) 201064, ¶ 30, persuasive because the court there "failed to make a substantive determination of any of [the factual and legal] issues when it entered its order." Moreover, we note that " '[a] party cannot sit idly by while the trial court undertakes a course of action and then allege error in that regard.' " *Meeks v. Great America, LLC*, 2017 IL App (2d) 160655, ¶ 14 (quoting *Tokar v. Crestwood Imports, Inc.*, 177 Ill. App. 3d 422, 434 (1988)). Plaintiff did just that by failing to attempt to present any evidence in support of her position. We find no abuse of discretion in regard to how the hearing was conducted.

¶ 30                                    2. *Standard of Review*

¶ 31            Where, as here, there was no evidentiary hearing below and the motion to compel arbitration was decided on the basis of the parties' written submissions, the appropriate standard of review is *de novo. Mulligan v. Loft Rehabilitation & Nursing of Canton, LLC*, 2023 IL App (4th) 230187, ¶ 17.

¶ 32                          C. Application of the FAA in Illinois Courts

¶ 33            Resolution of this case requires us to apply both Illinois law and federal law to different aspects of the analysis. The applicable federal law is the FAA, which was enacted by Congress "in response to judicial hostility to arbitration." *Viking River Cruises, Inc., v. Moriana*, 596 U.S. ___, ___, 142 S. Ct. 1906, 1917 (2022). "The basic purpose of the FAA is to overcome the historical reluctance of courts to enforce agreements to arbitrate." *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 41 (2010) (*Carter I*). Section 2 of the FAA provides as follows:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract ***." 9 U.S.C. § 2.

It has long been established that "the FAA applies in state as well as federal court and preempts conflicting state laws." *Carter I*, 237 Ill. 2d at 41 (citing *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984)).

¶ 34        "The division of labor between courts and arbitrators is a perennial question in cases involving arbitration clauses." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741 (7th Cir. 2010). This is especially challenging when the arbitration clause contains a delegation clause, which is "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010). The United States Supreme Court has recognized "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68-69. Unless the party opposing arbitration specifically challenges the delegation clause, the court must treat it as valid and enforce it, leaving any challenge to the validity of the arbitration agreement as a whole for the arbitrator. *Id.* at 72. Similarly, "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006).

¶ 35    That is not to say that there is no role for a court to play when it is asked to enforce an arbitration agreement. "Even the most sweeping delegation cannot send the contract-formation issue to the arbitrator, because, until the court rules that a contract exists, there is simply no agreement to arbitrate." *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022); see *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 296 (2010) (noting that "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide"). The United States Supreme Court has stated, "The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded." *Buckeye*, 546 U.S. at 444 n.1 (noting that whether the contract was ever signed, or whether the signor had the authority and mental capacity to assent, were contract formation issues that could be addressed by the court).

¶ 36    Consequently, based on the foregoing, we must decide (1) under Illinois law, whether a contract for arbitration was formed and, if so, (2) under the FAA, whether federal law requires that the arbitrator address any other disputes between the parties.

¶ 37              1. *Formation of an Arbitration Agreement*

¶ 38    Where, as here, a party challenges the formation of an arbitration agreement, it is a question going "to the making of the agreement to arbitrate" and may be adjudicated by the court. *Id.* at 445. This is entirely consistent with what the United States Supreme Court has identified as "the 'first principle' of [its] FAA jurisprudence: that '[a]rbitration is strictly "a matter of consent." ' " *Moriana*, 596 U.S. at ___, 142 S. Ct. at 1918 (quoting *Granite Rock*, 561 U.S. at 299, quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989)). Defendants here concede that the circuit court was entitled to examine questions of contract formation.

¶ 39        As noted above, the question of whether the parties formed a contract for arbitration is one to be determined according to Illinois law. The analysis may differ, however, depending on which type of claim is being examined. Consequently, our contract formation analysis looks separately at the question of whether there was a valid contract formed for arbitration of the decedent's claims brought under the Survival Act, as opposed to the claims of the next of kin under the Wrongful Death Act.

¶ 40                    a. Decedent's Claims Under the Survival Act

¶ 41        With respect to the issues of contract formation, plaintiff argues that decedent's medical power of attorney did not vest her with the authority to agree to enter into a contract for arbitration on decedent's behalf. However, plaintiff completely ignores the fact she was also the decedent's financial power of attorney, and defendants submitted both powers of attorney in support of their motion to compel arbitration. Thus, even if plaintiff was not authorized to agree to arbitration as the decedent's agent under the medical power of attorney, she may have been authorized under the financial power of attorney.

¶ 42        Plaintiff has completely failed to address her authority under the financial power of attorney as a basis for execution of the agreement to arbitrate. Indeed, at oral argument, counsel suggested that no such document was part of the record or argued below; both statements are flatly incorrect.

> "A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research [citation]; it is neither the function nor the obligation of this court to act as an advocate or search

the record for error." (Internal quotation marks omitted.) *Enbridge Pipeline (Illinois), L.L.C. v. Murfin*, 2020 IL App (5th) 160007, ¶ 72.

¶ 43 Accordingly, as to decedent's direct claims made under the Survival Act, plaintiff has failed to show she was not authorized to sign the arbitration agreement. As such, the circuit court's determination that "an agreement to arbitrate was properly formed" was not erroneous.

¶ 44 b. Wrongful Death Claims

¶ 45 Plaintiff argues that the circuit court could not refer the wrongful death claims to arbitration because "neither a resident [n]or his agent has the authority to bind heirs asserting a wrongful death claim," citing *Carter v. SSC Odin Operating Co.*, 2012 IL 113204 (*Carter II*).

¶ 46 Though lengthy, plaintiff's complaint is exceedingly confusing as to what claims are being brought. For example, each claim asserts in its final paragraph that it is brought pursuant to the Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2022)). Just as clearly, however, the introductory declaration of the complaint states that it is brought "in accordance with the Illinois Wrongful Death Act (740 ILCS 180.01) and Survival Act (755 ILCS 5/27-6)." The prayer in each count also requests "all elements of damages permitted under 740 ILCS 180.01," *i.e.*, the Wrongful Death Act. If the motion before the circuit court had been one directed at the sufficiency of the pleadings, sorting out these errors would be in order. In the instant context, however, the initial question is simply whether plaintiff's complaint represents an attempt to bring a claim under the Wrongful Death Act; though her complaint may be defective in form, plaintiff's intention to bring such a claim is clear.

¶ 47 The real parties in interest in a wrongful death claim are the decedent's next of kin. *Glenn v. Johnson*, 198 Ill. 2d 575, 583 (2002). There are references to decedent's "family" in plaintiff's complaint, but the next of kin are not specifically identified. However, defendants

concede that plaintiff is decedent's daughter, so at least her status as one of decedent's next of kin is known. While it is true that plaintiff signed the admission and arbitration agreements, she did so *only* in a representative capacity for decedent. Thus, there is nothing in the record to show that any arbitration agreement was ever formed between defendants and decedent's next of kin in an individual capacity.

¶ 48    The supreme court's decision in *Carter II* controls the determination of whether the wrongful death claims must be sent to arbitration. In a case with facts similar to those at issue here, the supreme court held that wrongful death claims arising out of the death of a nursing home resident were not subject to an arbitration agreement to which the wrongful death beneficiaries were not parties:

> "For purposes of count I of the complaint, which alleges a violation of the Nursing Home Care Act by defendant pursuant to our survival statute, plaintiff is bound to arbitrate that claim, which had already accrued to Gott prior to death and which is brought for the benefit of Gott's estate. For purposes of count II, the wrongful-death action, plaintiff is not acting in Gott's stead. As already discussed, a wrongful-death action does not accrue until death and is not brought for the benefit of the decedent's estate, but for the next of kin who are the true parties in interest. Plaintiff, as Gott's personal representative in the wrongful-death action, is merely a nominal party, effectively filing suit as a statutory trustee on behalf of the next of kin. [Citation.] Plaintiff is not prosecuting the wrongful-death claim on behalf of Gott, and thus plaintiff is not bound by Gott's agreement to arbitrate for purposes of this cause of action." *Carter II*, 2012 IL 113204, ¶ 57.

¶ 49 The supreme court's decision in *Carter II* was made after full consideration of the application of the FAA. The conclusion that the beneficiaries could not be bound by an agreement to which they were not parties is consistent with the "first principle" of FAA jurisprudence: that arbitration is strictly a matter of consent. *Moriana*, 596 U.S. at ___, 142 S. Ct. at 1918. In any event, the supreme court's decision in *Carter II* binds us here and requires that we reverse the circuit court's order sending the wrongful death claims to arbitration.

¶ 50 2. *Referral of Survival Act Claims to Arbitration*

¶ 51 Despite the formation of an arbitration agreement between the parties that would apply to the Survival Act claims, plaintiff advances a number of arguments against referral of those claims to arbitration: (1) the existence of a federal regulation that came into effect after the signing of the agreement, (2) state law contract defenses she contends must be resolved by the circuit court, and (3) the application of the contract's termination on "discharge" language, which she contends was triggered by the decedent's death and thus defeats the arbitration agreement. There can be no doubt that courts are perfectly capable of addressing and resolving issues such as these, but the question is whether the parties have contractually agreed that they would be resolved by the arbitrator, and not by a court. In this context, the delegation clause in the parties' agreement is of critical importance.

¶ 52 A delegation clause is a provision in an arbitration agreement that clearly and unmistakably gives the arbitrator the exclusive authority to resolve any dispute about the validity and enforceability of the arbitration agreement. *Rent-A-Center*, 561 U.S. at 66, 68. Here, the contract recites the parties' agreement that "any disputes arising hereunder shall be submitted to binding arbitration and not to a court." The agreement further provides that the arbitration "shall be conducted in accordance with the rules of the American Arbitration Association ('AAA')." The

AAA's rules provide that the arbitrator "shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part" and that "an arbitration clause shall be treated as an agreement independent of the other terms of the contract." *Consumer Arbitration Rules*, Am. Arbitration Ass'n, at 17 (eff. Sept. 1, 2014), https://adr.org/sites/default/files/Consumer%20Rules.pdf [https://perma.cc/43K2-39PH]; *Commercial Arbitration Rules and Mediation Procedures*, Am. Arbitration Ass'n, at 13 (eff. Oct. 1, 2013), https://adr.org/sites/default/files/Commercial%20Rules.pdf [https://perma.cc/UXK5-LCJU].

¶ 53    As discussed above, it is clear that an agreement to arbitrate has been formed. Consequently, all of the issues raised by plaintiff—including the question of whether the decedent's death constitutes a "discharge" terminating the agreement—are issues the parties have already agreed will be decided by the arbitrator. "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc., v. Archer & White Sales, Inc.*, 586 U.S. ____, ____, 139 S. Ct. 524, 528 (2019). This is true even if the court considers the dispute being referred to arbitration as "wholly groundless," as this "confuses the question of who decides arbitrability with the separate question of who prevails on arbitrability." *Id.* at ___, 139 S. Ct. at 531.

¶ 54    Were we simply construing the parties' agreement under Illinois contract law, we would not be troubled by the fact that the arbitration agreement was on a document separate from the admission agreement to which it relates; we would apply the established rule that "instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are regarded as one contract and will be construed together." *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007). "[A]s a matter of substantive federal arbitration law" under the FAA,

however, "an arbitration provision is severable from" the arbitration clause itself. *Buckeye*, 546 U.S. at 445. This "arbitration law applies in state as well as federal courts," meaning that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445-46. Consequently, while the parties disagree about whether the admission agreement has terminated as a result of the decedent's death, there is no argument that the *arbitration agreement* terminated as a result of a provision specific to it. Because plaintiff asserts the termination of the agreement as a whole, and not of the arbitration agreement in particular, the dispute is one the arbitrator must address.

¶ 55     Plaintiff's reliance on *Clanton v. Oakbrook Healthcare Centre, Ltd.,* 2023 IL 129067, for the opposite conclusion is entirely understandable. However, *Clanton* only superficially appears to have addressed the issues presented here. In *Clanton*, the contract provided that it terminated " 'immediately upon the resident's death.' " *Id. ¶* 5. The contract here, however, terminates on "discharge." Whether death constitutes a "discharge" that triggers termination of the contract is a question of contract interpretation, and "matters of contract interpretation are for an arbitrator to decide initially." *Kinkel v. Cingular Wireless, LLC*, 357 Ill. App. 3d 556, 562 (2005). It is also unclear whether the arbitration agreement at issue in *Clanton* had a delegation clause.

¶ 56     More fundamentally, *Clanton* never addressed—and was not asked to address[1]— the impact of the FAA. Here, on the other hand, the preclusive effect of the FAA constitutes the

---

[1]The parties in *Clanton* did not mention the FAA as part of their case on appeal. See Brief of Appellants, at 10-11, *Clanton*, 2023 IL 129067 (No. 129067), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/4a056dea-abcd-4573-a60b-234b9feb3852/129067_ATB.pdf [https://perma.cc/WV4Q-V3KP] (referencing only "the strong federal policy favoring the use and enforceability of arbitration agreements"); Brief of Appellee, *Clanton*, 2023 IL 129067 (No. 129067), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/bae893b0-85e8-4166-a994-7e279b463cb3/129067_AEB.pdf [ https://perma.cc/8VBJ-DRFG ] (making no reference to federal law); Reply Brief of Appellants, *Clanton*, 2023 IL 129067 (No. 129067), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/8518b1ae-6d46-4517-965d-c82239db3009/129067_RPB.pdf [https://perma.cc/9GJC-HLK4] (same).

heart of defendants' position on appeal. We are mindful that this court has a duty to apply the supreme court's precedent to the facts of the case before us; when the supreme court has declared the law on any point, it alone can overrule and modify its previous opinion. *Yakich v. Aulds*, 2019 IL 123667, ¶ 13. It is also true, however, that " '[a] judicial opinion is a response to the issues before the court *** [and] must be read in the light of the issues that were before the court for determination.' " *MB Financial Bank, N.A. v. Brophy*, 2023 IL 128252, ¶ 27 (quoting *Nix v. Smith*, 32 Ill. 2d 465, 470 (1965)). Because *Clanton* does not address application of the FAA to the issues presented in that case, our FAA analysis addresses matters that the supreme court was never asked to consider. As explained above, the FAA analysis is crucial to the outcome of this case.

¶ 57 Similarly, in *Nord v. Residential Alternatives of Illinois, Inc.*, 2023 IL App (4th) 220669, this court interpreted essentially identical language in an arbitration agreement and concluded that the patient's death triggered the termination on "discharge" provision and effectively ended the arbitration agreement. One could validly distinguish *Nord* from this case by noting that the question of whether there had been a "discharge" was conceded there, while here it is not. While a plausible distinction, it does not go far enough, as it fails to account for more fundamental differences between the analysis in *Nord* and the one we have undertaken here. The court in *Nord* never addressed any of the applicable United States Supreme Court precedent establishing that, under the federal law applicable here, it is our duty to defer all other matters to the arbitrator once we find that an arbitration agreement has been validly formed. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (courts must examine the question of arbitrability by applying the " 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act,' " (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983))). The question of whether the

decedent's death constitutes a "discharge" that terminates the contract is one squarely within the delegation clause, so it must be answered by the arbitrator.

¶ 58 Plaintiff argues that the FAA does not preempt state law contract defenses, citing *Carter II*, 2012 IL 113204, and *Calusinski v. Alden-Poplar Creek Rehabilitation & Health Care Center, Inc.*, 2022 IL App (1st) 220508. These cases do not support plaintiff's argument. In *Carter II*, the supreme court addressed not a defense to contract formation, but the separate question of whether the parties had formed an agreement to arbitrate at all; as explained above, this is an issue for the court to decide. See *Buckeye*, 546 U.S. at 444 n.1. Here, on the other hand, the formation of the arbitration agreement is established. In *Calusinski*, 2022 IL App (1st) 220508, ¶ 15-17, the defense of unconscionability was raised against the *arbitration agreement specifically*, not against the contract as a whole, and the court had the authority to conclude that the arbitration agreement was unconscionable. See *Buckeye*, 546 U.S. at 448-49 (explaining the "separate enforceability of arbitration provisions"). Moreover, the arbitration agreement in *Calusinski* did not include a separate delegation provision (see *Calusinski*, 2022 IL App (1st) 220508, ¶ 4); otherwise, even this challenge would have been referred to the arbitrator under the delegation provision. Here, plaintiff is challenging the contract as a whole, not the arbitration agreement or the delegation provision.

¶ 59 In short, because plaintiff has not "challenged the delegation provision specifically," we are obligated to give it and the arbitration agreement full effect. See *Rent-A-Center*, 561 U.S. at 72 (finding the court must treat the delegation provision as valid and enforce it unless the party opposing arbitration challenged the delegation provision specifically).

¶ 60                                  III. CONCLUSION

¶ 61 For the reasons stated, we affirm the Jersey County circuit court's May 12, 2023, order denying plaintiff's motion to vacate and set aside the court's January 24, 2023, order

compelling arbitration of the claims brought pursuant to the Survival Act. We reverse the court's order insofar as it compelled the arbitration of the Wrongful Death Act claims and remand as to those claims. On remand, the circuit court retains discretion to either proceed to litigation of the Wrongful Death Act claims or stay those proceedings pending the outcome of the arbitration of the Survival Act claims. See *Moses H. Cone*, 460 U.S. at 20 n.23.

¶ 62        Affirmed in part and reversed in part.

¶ 63        Cause remanded with directions.

¶ 64        JUSTICE HARRIS, specially concurring:

¶ 65        I agree with the majority analysis and disposition. I write separately to address my concurrence in *Nord v. Residential Alternatives of Illinois, Inc.*, 2023 IL App (4th) 220669. As has already been discussed, this court in *Nord* addressed similar circumstances and claims on appeal but reached a different result. In *Nord*, we found that upon the resident's discharge, the residential contract, including the arbitration provision and delegation clause, ceased to exist. *Id.* ¶ 48. Based on a finding that the entire contract, including the arbitration provision, was terminated, we concluded the circuit court had correctly denied the defendants' motion to compel arbitration.

¶ 66        However, after further consideration, I am persuaded by defendants' argument in this case that after a court has determined that an arbitration agreement, such as the agreement here and the one in *Nord*, was formed, any other issue relating to the existence or enforceability of the arbitration agreement is reserved for the arbitrator to decide. This is owing to the preclusive effect of the agreement's delegation clause on a court's authority to decide. Under the circumstances here, like in *Nord*, the FAA and United States Supreme Court precedent compels the conclusion that if a valid delegation clause exists, issues regarding arbitrability are reserved for the arbitrator, not the court. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ___,

___, 139 S. Ct. 524, 529 (2019). The existence of an unchallenged delegation clause in this case means the question whether the resident's death constituted a "discharge" was to be answered by the arbitrator.

¶ 67    PRESIDING JUSTICE TURNER, concurring in part and dissenting in part:

¶ 68    I would affirm the circuit court's judgment *in toto*. The matter of what parties and claims are bound by the arbitration agreement is a question of arbitrability and is not related to the formation of the arbitration agreement itself. Here, we have a valid nursing home admission contract with an addendum containing an arbitration agreement. Plaintiff does not dispute the arbitration agreement contains a broad delegation clause. As such, all matters of arbitrability, including what claims are bound by the arbitration agreement (scope/enforceability), are questions for the arbitrator to decide.

¶ 69    As the majority explains, even with a delegation clause, the circuit court determines whether the arbitration agreement was formed. *Supra* ¶ 35. Despite the circuit court finding an agreement to arbitrate was properly formed and delegating to the arbitrator the other contentions raised by plaintiff in response to defendants' motion to compel arbitration, plaintiff, the appellant, simply realleges her same arguments she raised in the circuit court on appeal and does not develop any arguments as to why those issues should be decided by a court and not the arbitrator. Defendants contend the court properly found an arbitration agreement was formed, given the decedent's powers of attorney, and then asserted all of plaintiff's other issues were matters for the arbitrator under the delegation clause. Plaintiff did not respond to defendants' aforementioned contention. As such, plaintiff never argued on appeal her wrongful death claims could be considered by the court because those claims were matters of contract formation and not arbitrability. On page 25 of her brief, plaintiff asserts, even with "an enforceable arbitration

- 22 -

agreement," that agreement could not be "enforced" against those who did not sign the agreement, which is an arbitrability challenge. See *Attix v. Carrington Mortgage Services*, LLC, 35 F.4th 1284, 1295 (11th Cir. 2022) (stating questions of arbitrability include enforceability, scope, or applicability of the parties' arbitration agreement). The majority should not have crafted a contract formation argument for plaintiff, who was the appellant and had the burden of presenting developed arguments to this court. This court is "entitled to have *the issues on appeal clearly defined* with pertinent authority cited and a *cohesive legal argument presented*." (Emphases added and internal quotation marks omitted.) *Walters v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 5, 960 N.E.2d 1226. Regardless, the majority's analysis is flawed.

¶ 70        In finding it could address the arbitrability of plaintiff's wrongful death claims because that issue was one of contract formation, the majority finds our supreme court's decision in *Carter II*, 2012 IL 113204, is controlling. There, the supreme court addressed two challenges to the arbitrability of the plaintiff's claims. See *Carter II*, 2012 IL 113204, ¶ 1. However, no contract formation issues related to the two arbitration agreements were before the supreme court. See *Carter II*, 2012 IL 113204, ¶ 1. Specifically, contract formation involves an offer, an acceptance, and consideration (*Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151, 847 N.E.2d 99, 109 (2006)), and no challenges to those elements were raised against the two arbitration agreements in *Carter II*. The arbitrability challenges were properly before the court because the arbitration agreement in that case did not contain a delegation clause. *Carter II*, 2012 IL 113204, ¶ 5. Without a delegation clause in an arbitration agreement, "gateway matters of arbitrability" are for the court to determine. *Savers Property & Casualty Insurance Co. v. National Union Fire Insurance Co. of Pittsburg, PA*, 748 F.3d 708, 722 (6th Cir. 2014). Thus, the issue before the supreme court in *Carter II* was whether the plaintiff's wrongful death claims were bound by the two existing

arbitration agreements or, stated differently, whether the two arbitration agreements applied to or were enforceable against the plaintiff's wrongful death claims. See *Carter II*, 2012 IL 113204, ¶ 56. While the supreme court examined who were the parties to the two arbitration agreements in answering that question in the negative (*Carter II*, 2012 IL 113204, ¶ 56), the supreme court did not in any way indicate the question presented was one of contract formation and not a matter of arbitrability. I note the *Carter II* analysis frequently refers to whether the plaintiff was "bound" by the agreements to arbitrate, indicating an issue of enforceability/applicability of the existing arbitration agreements. See *Carter II*, 2012 IL 113204, ¶¶ 54, 56-57. The *Carter II* decision may control the issue of whether the arbitration agreement in this case is enforceable against plaintiff's purported wrongful death claims, but that decision is for the arbitrator, given the delegation clause in the arbitration agreement.

¶ 71 The majority's jumping to the merits of the arbitrability issue, despite a valid delegation clause, was expressly rejected by the United State Supreme Court in *Henry Schein, Inc.*, 586 U.S. at ____, 139 S. Ct. at 530. There, the Supreme Court addressed the propriety of some courts deciding the arbitrability question themselves, where the argument "the arbitration agreement applies to the particular dispute [was] 'wholly groundless.' " *Henry Schein, Inc.*, 586 U.S. at ____, 139 S. Ct. at 527-28. In rejecting that approach, the Supreme Court noted, "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc.*, 586 U.S. at ____, 139 S. Ct. at 530. Here, the majority precisely does what the United States Supreme Court has enjoined.

¶ 72 Here, plaintiff does not develop any argument disputing the circuit court's finding the arbitration agreement's applicability to her wrongful death claims was a question of

arbitrability delegated to the arbitrator. Accordingly, I would affirm the circuit court's finding the question of whether the wrongful death claims were bound by the arbitration agreement was one for the arbitrator.

¶ 73 Likewise, I note my disagreement with this court's recent analysis in *Nord*, 2023 IL App (4th) 220669. There, in direct contravention of *Henry Schein, Inc.*, the analysis entirely ignored the appellant's argument the circuit court erred by failing to enforce a delegation clause in the arbitration agreement. Instead, this court only addressed the merits of one of the arbitrability arguments. *Nord*, 2023 IL App (4th) 220669, ¶¶ 25-26. Moreover, regardless of the existence of a delegation clause in *Nord*, a challenge to the validity of the contract as a whole, such as seeking to enforce a termination upon death clause in the nursing home admission contract, is a matter for the arbitrator and not the court. See *Buckeye*, 546 U.S. at 445-46 (noting unless the challenge is specifically to the arbitration provision, the issue of the contract's validity is considered by the arbitrator). As such, the effect of the termination-upon-death clause in the admission contract on the arbitration agreement in *Nord* was a matter for the arbitrator.

*Mikoff v. Unlimited Development, Inc.*, 2024 IL App (4th) 230513

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Jersey County, No. 22-LA-11; the Hon. Allison Lorton, Judge, presiding. |
| **Attorneys for Appellant:** | Lanny Darr, of Darr Law Offices, Ltd., of Alton, for appellant. |
| **Attorneys for Appellee:** | Donna J. Fudge, of Fudge Broadwater, P.A., of St. Petersburg, Florida, for appellees. |