2025 IL App (1st) 241212-U
No. 1-24-1212

SIXTH DIVISION
October 10, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| DAVID HUBERMAN, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois, County |
| Plaintiff-Appellant, | ) | Department, Law Division |
| | ) | |
| v. | ) | |
| | ) | No. 2023L011997 |
| MCDERMOTT WILL & EMERY LLP | ) | |
| | ) | |
| Defendant-Appellee. | ) | The Honorable |
| | ) | John J. Curry, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Hyman and Gamrath concurred in the judgment.

**ORDER**

¶ 1     *Held:* The circuit court did not err in granting the motion to compel arbitration because the parties' arbitration agreement incorporated arbitral rules which clearly and unmistakably delegated arbitrability to the arbitrator.

¶ 2     This matter comes before this court on appeal pursuant to Illinois Supreme Court Rule 307(a)(1), stemming from a dispute under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA") filed by plaintiff-appellant, David Huberman ("Huberman") against his former employer, defendant-appellee, McDermott Will & Emery LLP ("McDermott").

¶ 3    McDermott filed a motion to compel arbitration and dismiss the action ("Motion") pursuant to the parties' Amended and Restated Partnership Agreement ("Partnership Agreement"). Following briefing, the circuit court granted McDermott's Motion and stayed the proceedings pending the outcome of arbitration.

¶ 4    On appeal, Huberman asserts that the circuit court erred when it granted the Motion because (1) the arbitration provision in the Partnership Agreement is void as it violates public policy, and (2) the Partnership Agreement does not contain a clear and unmistakable delegation of arbitrability to the arbitrator.

¶ 5                                    I. BACKGROUND

¶ 6    At all relevant times herein, Huberman resided in Isreal and was an attorney licensed to practice law in the State of Illinois. McDermott is a law firm and an Illinois for-profit limited liability partnership headquartered in Chicago, Illinois.

¶ 7    On April 21, 2021, Huberman received an offer to join McDermott's Transaction Practices Group as an income partner. As stated in the offer, McDermott was required to verify Huberman's proof of eligibility to work in the United States pursuant to the Immigration Reform and Control Act. The offer provided a salary of $300,000 for 2021. Huberman accepted the offer and, on August 13, 2021, the parties executed the Partnership Agreement. Huberman became an income partner effective August 23, 2021.

¶ 8                    A. The Partnership Agreement, CPR Rules, and IWPCA

¶ 9    The Partnership Agreement includes the following provision relating to the parties' duty to arbitrate ("arbitration agreement"):

        SECTION 10 Dispute Resolution Procedures

        10.1 General

To the extent permitted by applicable law, all claims \*\*\*, whether in contract, tort, or otherwise arising out of or relating to this Partnership Agreement or the partnership relationship, including, without limitation, all claims that are cognizable under a federal, state, or local statute or ordinance or the common law of any state relating to alleged civil rights violations, unfair employment practices, discrimination or harassment, shall be resolved in accordance with the procedures specified in this Section, which Section shall represent the sole and exclusive procedures for the resolution of any such claims. This Section shall survive termination of the partnership relationship and shall apply to former partners and to the estate or conservator of a former partner.

\*\*\*

10.6 Arbitration

Any dispute arising out of or relating to this Partnership Agreement or the breach, termination, or validity thereof, which has not been resolved by a mediation procedure as provided herein within 60 days of the initiation of such procedure, shall be settled by arbitration by a sole arbitrator in accordance with the CPR Rules for Non-Administered Arbitration of Business Disputes [(CPR's Rules)] in effect on the date of the adoption of this amendment \*\*\*. The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. § 1-16. \*\*\*

¶ 10    Under CPR's Rules, the scope of the arbitrator's authority is as follows:

Rule 8: Challenges to the Jurisdiction of the Tribunal

8.1 The Tribunal shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement. This authority extends to jurisdictional challenges with respect to both the subject matter of the dispute and the parties to the arbitration.

¶ 11    Additionally, CPR's Rules provide the following for attorney fees:

Rule 17: Costs

\*\*\*

17.2 The Tribunal shall fix the costs of arbitration in its award. The costs of arbitration include:

\*\*\*

b. The costs for legal representation and assistance and experts incurred by a party to such extent as the Tribunal may deem appropriate \*\*\*.

However, the IWPCA mandates that, in a civil action, a prevailing employee "*shall* [] recover costs and all reasonable attorney's fees." 820 ILCS 115/14(a) (emphasis added).

¶ 12                    B. Huberman Does Not Receive Salary Increase

¶ 13    In December 2021, Huberman received an email from Ira Coleman, McDermott's chairman, which stated that the base salary for all U.S. income partners would increase to $425,000 beginning January 1, 2022. In January 2022, Huberman was informed that he would not receive

the raise because he resided in Isreal instead of the U.S. McDermott did not pay Huberman at the increased salary rate. Ultimately, Huberman left McDermott in October 2022.

¶ 14                                    C. Procedural History

¶ 15        On November 19, 2023, Huberman filed a complaint against McDermott for unpaid compensation pursuant to the IWPCA. On March 22, 2024, McDermott filed a motion to compel arbitration and dismiss the matter pursuant to section 2-619(a)(9) of the Illinois Code of Civil Procedure, 735 ILCS 5/2-619(a)(9) ("Code"). The Motion argued that Section 10 of the Partnership Agreement required the parties to arbitrate Huberman's claim and that the arbitration agreement delegated arbitrability and scope to the arbitrator through the incorporation of CPR's Rules for Non-Administered Arbitration of Business Disputes.

¶ 16        In relevant part, Huberman's response argued that CPR's Rules regarding permissible fee shifting violate Illinois' public policy because the IWPCA mandates an employer to pay a prevailing employee's attorney fees and costs.[1] On reply, McDermott pointed out that Huberman did not argue that the Partnership Agreement failed to delegate questions of arbitrability to the arbitrator. Further, as McDermott argued, any question of arbitrability, including questions that the agreement was void against public policy, must be decided by the arbitrator. In the alternative, McDermott argued that CPR's Rules were not against public policy because they permit a prevailing employee to recover attorney fees and costs. Subsequently, Huberman filed a surreply which finally argued that the Partnership Agreement did not clearly and unmistakably delegate arbitrability to the arbitrator and, thus, any questions of arbitrability should be left to the court.

---

[1] In his response brief, Huberman raised two additional arguments which claimed that (1) he was exempt from arbitration pursuant to section 1 of the FAA and (2) the Partnership Agreement was rendered legally impossible because the arbitration rules selected by the parties were no longer available to them. These issues were fully briefed and raised before the circuit court. However, we will not discuss the merits of these arguments further as Huberman does not raise either of these arguments on appeal.

¶ 17      On May 9, 2024, the circuit court granted McDermott's motion to compel arbitration and stayed the matter pending the outcome of arbitration. In its ruling, the circuit court stated that McDermott's reply brief "sufficiently set forth the status of law on all [] points" raised by Huberman. Huberman timely filed the instant notice of appeal on June 6, 2024.

¶ 18                                 II. ANALYSIS

¶ 19      On appeal, Huberman argues that the circuit court erred in granting McDermott's motion to compel arbitration. Ruling on a motion to compel arbitration is injunctive and is therefore appealable under Illinois Supreme Court Rule 307(a)(1) governing interlocutory appeals as of right. Ill. Sup. Ct. R. 307(a)(1); *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001). Generally, where an interlocutory appeal is brought under Rule 307(a)(1), the only issue is whether there was a showing sufficient to sustain the circuit court's order granting or denying the motion to compel arbitration. *Keefe v. Allied Home Mortgage Corp.*, 393 Ill. App. 3d 226, 229 (5th Dist. 2009); *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1174 (5th Dist. 2002). When the trial court decides whether to compel arbitration without an evidentiary hearing and without making any factual findings, the decision is a matter of law and subject to *de novo* review. *Keefe*, 393 Ill. App. 3d at 229; *Travis*, 335 Ill. App. Ed at 1174. In this case, the circuit court granted the motion to compel arbitration based upon the pleadings, exhibits, and legal arguments of the parties and did not conduct an evidentiary hearing and, as such, we review the circuit court's decision *de novo*.

¶ 20      Section 2-619(a)(9) of the Code allows for dismissal of a claim or "other appropriate relief," such as a stay of proceedings, where an affirmative matter avoids the legal effect of or defeats the claim. 735 ILCS 5/2-619(a)(9) (West 2022). A motion to stay proceedings and compel arbitration is essentially a section 2-619(a)(9) motion based on an affirmative matter, the exclusive

remedy of arbitration. *Sturgill v. Santander Consumer USA, Inc.*, 2016 IL App (5th) 140380, ¶ 21; *Travis*, 335 Ill. App. 3d at 1174. The moving party has the initial burden to establish that the parties have a valid agreement to arbitrate and that the controversy is within the scope of the arbitration agreement. *Sturgill*, 2016 IL App (5th) 140380, ¶ 22. In ruling on a section 2-619(a)(9) motion, the court must interpret all pleadings and supporting documents in a light most favorable to the nonmoving party. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004).

¶ 21        Pursuant to section 10.6 of the Partnership Agreement, the arbitration agreement is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable" but permits revocation of an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at § 2. Section 4 of the FAA empowers both state and federal courts to compel arbitration. See *id.* at § 4; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("§ 4 requires courts to compel arbitration 'in accordance with the terms of the agreement' upon motion of either party to the agreement"); *Fosler v. Midwest Care Center II, Inc.*, 398 Ill. App. 3d 563, 567 (2d Dist. 2009). Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Borowiec*, 209 Ill. 2d at 384. The FAA reflects the fundamental principle that arbitration is a matter of contract. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

¶ 22        Huberman argues that no arbitration agreement was ever formed between the parties because the fee shifting provision in CPR's Rules for Non-Administered Arbitration of Business Disputes is illegal as it violates the Illinois public policy and thus is void *ab initio*. He contends

that the arbitration agreement violates public policy because, while the IWPCA mandates an award of attorney fees to any prevailing employee, CPR's Rules instead permit an award of attorney fees as the arbitrator deems appropriate. Huberman further asserts that any issue of arbitrability should be left to the court because the arbitration agreement did not include a clear and unmistakable delegation of arbitrability to the arbitrator.

¶ 23    In response, McDermott notes that Huberman's public policy argument is an unconscionability argument. To that end, McDermott contends that the arbitrator should decide any issue of unconscionability because there was a clear and unmistakable delegation of arbitrability to the arbitrator through the arbitration agreement's incorporation of CPR's Rules. McDermott argues in the alternative that, even if there was no clear and unmistakable delegation of arbitrability, CPR's Rules relating to the fee shifting do not violate public policy because they do not prohibit a statutory award of attorney fees consistent with the IWPCA.

¶ 24    Huberman's raises a public policy argument as an attack on the formation of the arbitration agreement, claiming that no arbitration agreement was ever formed because the permissible fee shifting rule under CPR's Rules is contrary to public policy pursuant to the IWPCA. There can be no arbitration without a valid arbitration agreement. *Aste v. Metropolitan Life Insurance Co.*, 312 Ill. App. 3d 972, 975 (1st Dist. 2000). "In determining whether a valid arbitration agreement arose between the parties, a federal court should look to the state law that ordinarily governs the formation of contracts." *Id.* at 976 (quoting *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997)). In applying the FAA, "general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." *Tortoriello v. Gerald Nissan or Noth Aurora, Inc.*, 379 Ill. App. 3d 214, 226 (2d Dist. 2008) (quoting *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002)).

¶ 25      Gateway disputes about whether parties are bound by a given arbitration clause raises a "question of arbitrability." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Such questions are " 'issue[s] for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' " *Id.* at 83 (quoting *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986)). As such, parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Rent-A-Center*, 561 U.S. at 72 (2010) (citing *Howsam*, 537 U.S. at 83-85); *Mikoff v. Unlimited Development, Inc.*, 2024 IL App (4th) 230513, ¶ 34.

¶ 26      Here, the parties' arbitration agreement in itself did not include a delegation of arbitrability to the arbitrator. However, the agreement provided that any dispute "shall be settled by arbitration *** in accordance with [CPR's Rules]." To that end, Rule 8.1 of CPR's Rules grants the arbitrator "the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" and extends such power to "jurisdictional challenges with respect to both the subject matter of the dispute and the parties to the arbitration." Huberman opposes Rule 8.1 as a proper delegation clause because he claims that it is not a clear an unmistakable delegation of arbitrability to the arbitrator.

¶ 27      However, the breadth of case law cited by McDermott supports the contention that the use and incorporation of CPR's Rules is a clear and unmistakable delegation of arbitrability to the arbitrator. Federal courts addressing this issue have found that the incorporation of arbitral rules into an arbitration agreement can constitute "clear and unmistakable" evidence of the parties' intent to delegate questions of arbitrability to the arbitrator. See, e.g., *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522 (4th Cir. 2017) (the incorporation of JAMS rules which provided that the arbitrator shall rule on "arbitrability disputes, including disputes over the formation,

existence, validity, interpretation or scope of the agreement" is a clear an unmistakable delegation); *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) (the incorporation of AAA rules which provided that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with the respect to the *** validity of the arbitration agreement" was a clear and unmistakable delegation of arbitrability); *Chevron Corp. v. Ecuador*, 795 F.3d 200 (D.C. Cir. 2015) (the incorporation of UNCITRAL's arbitral rules which provided that the arbitrator "shall have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the arbitration clause" is clear and unmistakable evidence of delegation of arbitrability). As this matter is governed by the FAA, we are compelled to follow the federal courts. Rule 8.1 of CPR's Rules provides that the arbitrator shall have the power to "determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." In following the federal courts, the arbitration agreement's incorporation of CPR's Rules is a clear and unmistakable delegation of arbitrability to the arbitrator.

¶ 28      Notwithstanding the foregoing, we note that Huberman's brief initially attempts to frame his public policy argument as a contract formation issue arguing that "no arbitration agreement was formed between the parties." He correctly points out that "[e]ven the most sweeping delegation cannot send the contract-formation issue to the arbitrator, because, until the court rules that a contract exists, there is simply no agreement to arbitrate." *Mikoff*, 2024 IL App (4th) 230513, ¶ 35 (quoting *K.F.C. v. Snap Inc.*, 29 F. 4th 835, 837 (7th Cir. 2022) and citing *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 296 (2010)). However, it is important to note that the issue of a contract's validity is different from the issue of whether any agreement was ever formed between the parties. *Id.* (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S.

440, 444 (2006)). Formation challenges are "question[s] 'going to the making of the agreement to arbitrate,' and may be adjudicated by the court." *Id.* at ¶ 38 (quoting *Buckeye*, 546 U.S. at 445); see *Granite Rock*, 561 U.S. at 296 ("where the dispute at issue concerns contract formation, the dispute is generally for courts to decide.").

¶ 29  A reading of the cases cited by Huberman reveal that formation questions seek to determine whether the parties consented to or possessed the capacity to consent to an agreement, whether the agreement was actually executed, and whether there was authority to bind parties to an agreement. For example, Huberman cites *Mikoff v. Unlimited Development, Inc.*, 2024 IL App (4th) 230513, but *Mikoff* discusses whether or not an agent had the authority to bind the principal to an arbitration agreement. In another case cited by Huberman, *K.F.C. v. Snap Inc.*, 29 F. 4th 835 (7th Cir. 2022), the Seventh Circuit addressed whether a minor could form a contract and be bound to arbitration. *Id.* (holding that minority age is a contract defense that should be decided by the arbitrator, rather than a contract formation issue, because agreements with minors in Illinois are voidable, not void). The final contract formation case that Huberman cites is *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287 (2010). In *Granite Rock*, the Supreme Court determined the ratification date of the parties' collective bargaining agreement, which included an arbitration provision, was subject to judicial review because the ratification date was dipositive on this issue of whether the parties had formed an arbitration agreement at the time the dispute arose. *Id.* (noting that in *Buckeye*, 546 U.S. 440 (2006), a prior Supreme Court case, contract formation was not at issue because the parties agreed they had "concluded" an agreement to arbitrate and memorialized it as an arbitration clause in their loan contract).

¶ 30  Huberman does not argue that he did not execute or have the capacity to consent to the arbitration agreement, or any other basis to challenge the formation of the arbitration agreement.

In fact, within his argument that no arbitration agreement was formed, Huberman describes his public policy argument as a "contract defense of illegality" which "prohibits enforcement of the arbitration agreement." His argument is contract defense and contract validity issue, rather than a formation issue. As such, we cannot find that the circuit court erred in granting the motion to compel arbitration.

¶ 31    For the foregoing reasons, we need not address whether or not CPR's Rules permitting permissible fee shifting, rather than mandating fee shifting to a prevailing employee pursuant to the IWPCA, violate public policy. However, we do note that each case cited by Huberman is distinguished from the facts here. Huberman's cases involved arbitration agreements which contractually barred certain types of recovery that would have been otherwise available to the plaintiffs at law. See *Midgett v. Sackett-Chi., Inc.*, 105 Ill. 2d 143 (1984) (plaintiff was not compelled to arbitration where the parties collective bargaining agreement barred plaintiff's tort claim for retaliatory discharge and request for punitive damages thereunder); *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135 (2006) (plaintiff was compelled to arbitrate because the arbitration agreement permitted the arbitrator to award any remedy available at law and did not preclude plaintiff from recovering statutory remedies); *Bain v. Airoom, LLC*, 2022 IL App (1st) 211001 (finding an arbitration agreement impermissibly limited the plaintiff's statutory recovery of attorney fees and punitive damages available under the Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, where the agreement provided that the arbitrator "shall have the authority to award only compensatory damages."); *Turner v. Concord Nursing and Rehabilitation Center, LLC*, 2023 IL App (1st) 221721 (finding an arbitration agreement to be substantively unconscionable where the agreement waived the plaintiff's right to recover attorney fees and punitive damages because it contravened remedies recoverable under the Nursing Home Care Act, 210 ILCS 45/1-101 *et seq.*).

Unlike these cases, CPR's Rules differ because they do not create a complete bar to the recovery of attorney fees. Instead, CPR's Rules allow the arbitrator to award attorney fees and costs as he or she deems appropriate. This type of language permits the award of attorney fees in a manner that is consistent with the IWPCA, rather than imposes a complete bar to this recovery. However, we decline to opine whether this provision violates public policy or is substantively unconscionable as that is an issue delegated to the arbitrator.

¶ 32                                    III. CONCLUSION

¶ 33           For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 34           Affirmed.